J-A19021-18

2018 PA Super 356

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
NELSON SOTO :
:
Appellant : No. 1757 MDA 2017

Appeal from the Judgment of Sentence Entered September 27, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003614-2013

BEFORE: GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

OPINION BY NICHOLS, J.: **FILED DECEMBER 28, 2018**

Appellant Nelson Soto appeals from the judgment of sentence imposed after a jury found him guilty of aggravated assault, simple assault, disarming a police officer, resisting arrest, and possession of a controlled substance.[1] Appellant challenges the denial of his suppression motion, the sufficiency and weight of the evidence, the trial court's refusal to give a requested jury instruction, and the trial court's evidentiary rulings.[2] We affirm.

The facts and procedures leading to Appellant's conviction are well known to the parties, and the relevant portions of the record will be discussed below in further detail. We briefly note that Appellant was found guilty of the

_____

[1] 18 Pa.C.S. §§ 2702(a)(3), 2701(a)(1), 5104.1(a), and 5104, and 35 P.S. §780-113(a)(16), respectively. The trial court separately found Appellant guilty of accident involving damage to an unattended vehicle. 75 Pa.C.S. § 3745(a). Appellant was found not guilty of possession with intent to deliver a controlled substance and harassment.

[2] We have reordered Appellant's claims for this review.

above-stated offenses on September 21, 2017, and sentenced to an aggregate 4½ to 10 years' imprisonment followed by 2 years' probation on September 27, 2017. On October 6, 2017, Appellant timely filed post-sentence motions. The trial court denied Appellant's post-sentence motions on October 24, 2017.

Appellant timely filed a notice of appeal on November 14, 2017, and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement. The trial court filed a Rule 1925(a) opinion.

Appellant presents the following questions for review:

[1.] Whether the suppression court erred in failing to suppress all evidence and dismiss all charges because the police officer who pursued Appellant after he allegedly struck a parked, unoccupied vehicle, which is a summary offense under the Vehicle Code, did not have authority to seize and arrest appellant under Article I, § 8 of the Pennsylvania Constitution and/or the Vehicle Code?

[2.] Whether the evidence presented by the Commonwealth at trial was insufficient to convict [A]ppellant of the charges of aggravated assault, simple assault, disarming a police officer, and resisting arrest because the Commonwealth failed to disprove [A]ppellant was justified in his actions because he was attempting to run away from committing a summary offense under the Vehicle Code and the officer(s) who pursued him with lights and siren down a one-way street the wrong way and who tasered him in the back as he was trying to simply get away from the police and then repeatedly deployed the [T]aser on [A]ppellant as many as 10 times during which time [A]ppellant was trying to leave the area. In addition, the evidence was insufficient to convict [A]ppellant of the crimes of aggravated assault and simple assault because there was not adequate evidence that Appellant attempted to cause or caused bodily injury to a police officer. In addition, the evidence at trial was insufficient to convict appellant of the crime of disarming a police officer because at best the evidence showed that Appellant grabbed Officer Epilito's wrist or hand while the officer was tasering him multiple times. In addition, the evidence at trial was insufficient to convict the appellant of

resisting arrest because the arrest was unlawful as set forth in Issue [1]?

[3.] Whether the verdicts of the jury were against the weight of the evidence on the charges of aggravated assault, simple assault, disarming a police officer, and resisting arrest because of all the reasons relied upon in the post-sentence motion filed in this case?

[4.] Whether the trial court erred by failing to give Appellant's point for charge on resisting arrest to the jury after the Commonwealth agreed to the charge before the closing arguments and the court stated on the record at the time points for charge were discussed that it would give said charge and when defense counsel renewed the request for that specific charge at the close of the charge to the jury, but the court still refused to give the charge even though defense counsel argued the specific language and principles in that charge in closing to the jury to the prejudice of [A]ppellant?

[5.] Whether the trial court erred in permitting the Commonwealth's witnesses to mention to the jury that [A]ppellant was "on parole" because the prejudice to [A]ppellant by revealing such information was unduly prejudicial to [A]ppellant and was also evidence of other inadmissible bad acts such that the court should have precluded the jury from hearing that evidence?

[6.] Whether the trial court failed to exclude all the evidence of drugs seized from [A]ppellant because the Commonwealth failed to establish an adequate chain of custody of that evidence for all the reasons argued at the pretrial phase of the case pertaining to the illegal conduct of Officer Jody Royer as the person in charge of safeguarding this evidence and tasked with taking the evidence to the [Pennsylvania State Police] lab for testing?

Appellant's Brief at 3-5 (full capitalization omitted).

**Suppression**

The procedural background to Appellant's challenge to the suppression ruling is as follows.  On January 27, 2016, Appellant filed a motion to suppress

claiming that he was unlawfully seized. The trial court held a hearing on April 26, 2017, at which several police officers testified.

The suppression hearing testimony[3] reveals that at approximately 2:30 a.m. on July 20, 2013, Officer Nicholas Epolito of the Reading Police Department was "assigned to respond to a vehicle accident" on the 500 block of Chestnut Street. N.T. Suppression, 4/26/17, at 7-8. When the officer arrived at the accident scene, he saw a parked car and a second vehicle, which appeared to have struck the parked vehicle. *Id.* at 8. There were two females near the parked vehicle, who immediately began "yelling that the driver of the striking vehicle was fleeing down Pearl Street" and pointing. *Id.* at 9, 10.

Officer Epolito looked around and saw Appellant running south on Pearl Street. *Id.* at 9. The officer testified that Appellant "was the only person [he] could see within the block." *Id.* The officer thought Appellant "was the driver of the vehicle and was now committing a hit-and-run." *Id.* at 10.

Officer Epolito testified that he turned his vehicle around, "went the wrong way down Pearl Street[,] following" Appellant with his emergency lights and siren activated. *Id.* at 9, 23. Appellant ran into a vacant lot, approximately one-half block from the accident scene. *Id.* at 9. Officer Epolito continued to follow Appellant into the lot, and Appellant "attempted to scale a [six-foot high] fence." *Id.* at 11. The officer yelled for Appellant to

_____

[3] The scope of review for suppression orders is limited to the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

stop, and Appellant "did stop and turn[] around" to face the officer. *Id.* The officer ordered Appellant "to turn away from" the officer. *Id.* Appellant complied, and the officer "holstered [his] firearm to begin taking Appellant into custody." *Id.* The officer testified that Appellant then "turned back around and shoved me away from him." *Id.*

Officer Epolito testified that he used his Taser, but the Taser did not incapacitate Appellant. A struggle ensued, and the officer pushed Appellant to the ground. *Id.* at 11-12. The officer testified that he and Appellant continued to struggle on the ground and Appellant attempted to punch him in the face. *Id.* at 13. Appellant was not subdued until a backup officer, Sergeant Brian Thomas Rogers, arrived. Both Officer Epolito and Sergeant Rogers struck Appellant to subdue him. *Id.* at 30, 41. Appellant was handcuffed and then taken from the scene to a hospital by another officer. *Id.* at 50.

After the altercation, Officer Epolito returned to the accident scene and completed an accident report. *Id.* at 16-17. The officer spoke to the two females who initially reported that Appellant was fleeing the scene. *Id.* According to the officer, "[t]hey stated that their vehicle was parked[, Appellant] hit the vehicle[, and a]fter he hit the vehicle and realized we were on the way, he said I got to go I'm on parole and took off running." *Id.* Officer Epolito stated that one of the females was the owner of the vehicle. *Id.* On cross-examination, Officer Epolito testified that the two women reported that

Appellant was on parole and told them he could not stay **before** the officer began pursuing Appellant. N.T. Suppression at 22.

Also during the cross-examination of Officer Epolito, Appellant's counsel emphasized that the officer arrived on the scene approximately ten minutes after the accident was reported, and that the officer's post-incident reports did not indicate that he saw the two vehicles in contact with each other. *See id.* at 23, 33. Appellant elicited the officer's concessions that (1) the officer did not see the accident happen, (2) the officer did not know whether Appellant was the driver of the striking vehicle, and (3) Appellant could have given the owner of the other car his paperwork in the ten minutes between the report of the accident and the officer's arrival at the accident scene. *Id.* at 21-22, 33. Additionally, Appellant highlighted that Officer Epolito did not know the two females who reported that Appellant was the driver of the striking vehicle and ran away, and that the officer did not interview the females before pursuing Appellant. *Id.* at 21.

Officer Christian Morar testified that he arrived at the scene in a police transport wagon. *Id.* at 46. When Officer Morar arrived, Appellant was already in handcuffs. *Id.* at 47. Before placing Appellant in the wagon, Officer Morar searched Appellant and recovered plastic bags containing suspected cocaine from Appellant's shorts. *Id.* at 47-48. Further analysis of the contraband revealed that Appellant was in possession of thirty-two bags of cocaine. *Id.* at 15-16.

At the conclusion of the hearing, the trial court ordered the parties to submit memorandums in place of oral arguments. In his memorandum, Appellant asserted that Officer Epolito lacked the authority to arrest Appellant. Specifically, Appellant noted that "a police officer in uniform may arrest somebody for a violation of the Vehicle Code without a warrant when the Vehicle Code violation occurs in the presence of the police officer." Appellant's Mem. of Law, 6/3/16, at 3 (citing 75 Pa.C.S. § 6304(b), and Pa.R.Crim.P. 400, 440). Appellant argued that "because Officer Epolito had not witnessed the alleged Vehicle Code violation, he had no authority to arrest [Appellant] without a warrant and at best should have issued him a citation if he in fact had committed an alleged Vehicle Code violation." *Id.* at 4. Appellant continued, "Because Officer Epolito pursued [Appellant] in an attempt to make a warrantless arrest for a summary vehicle code violation . . ., the officer exceeded his arrest authority under the laws of the Commonwealth of Pennsylvania." *Id.*

The Commonwealth responded that Officer Epolito had reasonable suspicion to detain Appellant based on the report received from the two women and his flight from the scene. Commonwealth's Legal Mem. in Opp'n, 6/23/16, at 6. The Commonwealth further argued that probable cause to arrest Appellant for aggravated assault, attempting to disarm a police officer, and resisting arrest arose when Appellant "shoved Officer Epolito and began pulling away from him," "a struggle ensued," and Appellant grabbed the officer's Taser. *Id.* at 7-8.

- 7 -

The trial court issued an order and opinion denying Appellant's motion to suppress. The court found that Officer Epolito received information from the two women at the scene that the driver was fleeing and observed that (1) the parked vehicle and the striking vehicle were still in contact, (2) Appellant was running down Pearl Street, and (3) there were no other individuals on the street. Mem. & Order, 7/7/16, at 1, 5. The trial court concluded that the totality of the circumstances gave Officer Epolito reasonable suspicion to pursue and detain Appellant for further investigation. *Id.* at 5-6. The trial court further concluded that Appellant's resistance to Officer Epolito's attempt to detain Appellant established probable cause to arrest Appellant for other crimes. *Id.* at 6. The trial court, therefore, concluded that Appellant's arrest and the ensuing search of Appellant, which resulted in recovery of suspected cocaine, were proper.

On appeal, Appellant claims that the trial court erred in denying his motion seeking to suppress the cocaine found on his person. Appellant asserts that he was subject to an unlawful seizure when Officer Epolito began following him in a police vehicle with the lights and siren activated. Appellant's Brief at 8. Appellant further suggests that he was subjected to a custodial detention when the officer cornered Appellant in the parking lot, drew his weapon, ordered Appellant to come down off of the fence, tasered him in the back, and shoved him to the ground. Appellant's Brief at 16.

Appellant further argues that the two women who identified Appellant as the perpetrator of the accident were anonymous tipsters who were not

sufficiently reliable to justify a pursuit, detention, or arrest of Appellant. *Id.* at 16-17. Appellant continues that his flight from Officer Epolito alone did not give rise to an independent basis for the seizure. *Id.* Appellant refers to several legal principles including (1) the commencement of summary proceedings by arrest, *id.* at 12 (citing Pa.R.Crim.P. 400, 440), (2) Pennsylvania law regarding coerced abandonment, *id.* at 13 (citing ***Commonwealth v. Matos***, 672 A.2d 769 (Pa. 1996)), and (3) the unreliability of anonymous tips, *id.* at 14 (citing ***Commonwealth v. Mackey***, 177 A.3d 221 (Pa. Super. 2017)).

Appellant also notes that Officer Epolito's testimony was inconsistent with his post-arrest reports, including the narrative summary report and an affidavit of probable cause. Appellant reiterates that the officer's reports did not mention that the officer observed the two vehicles being in contact or that the officer believed Appellant was the driver of the vehicle. *Id.* at 15. Appellant also notes the officer's initial reports indicated that Appellant attempted to shove him, rather than actually pushing him, before attempting to flee from the fence. *Id.* at 27.

It is well settled that

> [o]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the

record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

Moreover, it is within the [trial] court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

**Commonwealth v. McCoy**, 154 A.3d 813, 815-16 (Pa. Super. 2017)

(citations and brackets in original omitted).

The principles governing our review of Appellant's claim are as follows:

Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." We have long recognized that there are three levels of intrusion involved in interactions between members of the public and the police. The first is a mere encounter, which requires no level of suspicion at all. The second level is an investigative detention, which must be supported by reasonable suspicion. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause.

* * *

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.

**Commonwealth v. Walls**, 53 A.3d 889, 892-93 (Pa. Super. 2012) (citations

omitted).

A pursuit of a fleeing suspect constitutes a seizure under Article I, Section 8 of the Pennsylvania Constitution. **Matos**, 672 A.2d at 770 (holding that individuals who abandoned items while being pursued by an officer without reasonable suspicion were entitled to suppression); **Commonwealth v. Ranson**, 103 A.3d 73, 77 (Pa. Super. 2014). Therefore, for a pursuit to be constitutional, the Commonwealth must demonstrate reasonable suspicion or probable cause that a defendant was engaged in criminal activity. **See In re D.M.**, 781 A.2d 1161, 1164 (Pa. 2001); **Ranson**, 103 A.3d at 77.

When considering an "anonymous tip," a court must consider "whether under the 'totality of the circumstances' the informant's tip established the necessary reasonable suspicion . . . ." **Ranson**, 103 A.3d at 78 (citation omitted). As this Court noted in **Mackey**:

> The veracity and reliability of anonymous tips are particularly difficult for the police to evaluate. Unlike trusted (or at least tested) informants or members of the public not concealing their identity, anonymous tipsters know they cannot be held to account for false allegations. In addition, they often fail to reveal the basis for their alleged knowledge and are generally unavailable to answer follow-up questions from police.

**Mackey**, 177 A.3d at 230 (citations omitted).

This Court has distinguished cases involving tips received by anonymous phone calls and those received in person. **Commonwealth v. Williams**, 980 A.2d 667, 672 (Pa. Super. 2009). Unlike an anonymous phone call, a face-to-face report exposes the tipster to possible criminal liability and permits an officer "to observe the witness'[s] demeanor and assess [the witness's]

credibility in light of [the officer's] past experience with investigating crimes." *Id.* Accordingly, a tip made in person "must be given more weight than a mere anonymous phone call." *Id.* (citations omitted).

Even if an initial seizure is not justified by reasonable suspicion, an individual may commit separate acts that permit a police officer to arrest the individual. *See Commonwealth v. Britt*, 691 A.2d 494, 498 (Pa. Super. 1997). In *Britt*, this Court concluded that even if police officers lacked probable cause to seize a defendant, the defendant "was not justified in resisting the officers' approach" and engaging in conduct "designed to inflict bodily injury upon the officers during the performance of their duty." *Id.* at 497-98. The *Britt* Court determined that "the officers had probable cause to pursue and arrest [the defendant] for aggravated assault and reckless endangerment" independent of an initial improper seizure. *Id.* at 498.

Instantly, Appellant raised inconsistencies between Officer Epolito's initial post-incident reports and his suppression hearing testimony. However, it was for the trial court to resolve those inconsistencies. *See McCoy*, 154 A.3d at 815-16. There was support in the suppression hearing for the court's findings that the officer received information from two women at the scene, specifically that Appellant was the driver of the striking vehicle and was fleeing the scene. The record also supported the court's findings that the officer observed that (1) the parked vehicle and the striking vehicle were still in contact, (2) Appellant was running down Pearl Street, and (3) there were no other individuals on the street. *See id.*

The trial court, moreover, appropriately considered the totality of the circumstances confronting Officer Epolito when he arrived at the scene. *See Walls*, 53 A.3d at 892-93. Contrary to Appellant's legal argument, the trial court was not obligated to regard the in-person report that the driver of a vehicle was fleeing as an anonymous tip. *See Williams*, 980 A.2d at 672. Additionally, other factors corroborated the report that Appellant was the driver of the striking vehicle, including Appellant's flight, which began before the officer arrived at the scene, and that Appellant was the only other person at the scene. Accordingly, we discern no basis to disturb the trial court's factual or legal conclusions that Officer Epolito stated specific facts justifying his pursuit and detention of Appellant for fleeing the scene of an accident.[4]

We also agree with the trial court that there was probable cause to arrest Appellant based on Officer Epolito's testimony that Appellant pushed the officer during a lawful detention, attempted to flee, and then engaged in an altercation with the officer. Therefore, even if the detention or arrest were improper, the officer's testimony that Appellant attempted to punch the officer

---

[4] To the extent Appellant asserts that it was unlawful to arrest him for an accident involving damage to an unattended vehicle, we note that Officer Epolito saw two cars that appeared to be in contact with each other, received information that the driver of the striking vehicle was leaving the scene, and observed Appellant approximately one-half block away from the accident scene. Under these circumstances, we conclude that there was a reasonable basis for the officer to believe that a violation of the Vehicle Code was occurring in his presence, even if approximately ten minutes elapsed from the time of the accident to the time the officer arrived at the scene. Moreover, the Pennsylvania Rules of Criminal Procedure permit an arrest for summary violation under extraordinary circumstances, such as when the suspect may be fleeing. *See* Pa.R.Crim.P. 400 & explanatory cmt. to Ch. 4.

- 13 -

gave rise to separate probable cause to arrest Appellant for aggravated assault. *See Britt*, 691 A.2d at 498. Therefore, Appellant's suppression claim merits no relief.

**Sufficiency of the Evidence**

Appellant next claims that the evidence at trial was insufficient to convict him of (1) aggravated assault and simple assault, (2) disarming a police officer, and (3) resisting arrest.

By way of background, we note that Officer Epolito's trial testimony was substantially similar to his suppression hearing testimony. Specifically, Officer Epolito testified at trial that after catching up to Appellant in the parking lot and reholstering his firearm, the officer attempted to grab Appellant. N.T. Trial, 9/19 to 9/21/17, at 37. According to the officer, as he moved closer to Appellant, Appellant "took both hands and pushed forward, pushing me by my upper body, trying to get away from me." *Id.* at 38.

Officer Epolito further testified that as Appellant's back was to him, he fired his Taser, but when prongs of the Taser struck Appellant, they were too close together for the Taser to incapacitate Appellant. *Id.* at 39-40. According to the officer, the shock from the Taser would have only caused pain, but not a loss of function. *Id.* at 40.

After attempting to use his Taser on Appellant, Officer Epolito stated that he "shoved" Appellant, and Appellant stumbled forward and turned. *Id.*

At that time, Appellant "grabbed ahold of the actual [T]aser that [the officer] was in the process of deploying and held onto it with his hand." *Id.*

Officer Epolito described the ensuing struggle with Appellant as follows:

At that point I grabbed ahold of [Appellant] and shoved him fully to the ground. Once we were on the ground he continued to try and wrestle that [T]aser away from me attempting to use the end of it as leverage to get it away. I was able to pin him to the ground with my knee and one arm while still trying to control the [T]aser with the hand that he was attempting to rip it out of. [Appellant] was attempting to throw punches at me. I was able to deflect them. He didn't make any strong contact with my face. He was punching more towards my body. We continued to wrestle around for some period of time.

* * *

. . . One -- the first back-up officer to arrive was, at the time he was my sergeant, Sgt. Rogers. He arrived on the scene, found the two of us fighting in the parking lot. He ran up, jumped in with us. Once he was able to get there and help me try and get control of [Appellant] I was able to break my hand away that [Appellant] was holding onto with the [T]aser. I was able to throw the [T]aser to the side. At that time I struck [Appellant] several times with a closed fist. Once he was struck several times and the second officer was also on top of him, we were able to get control of his hands and get him into handcuffs.

*Id.* at 40-41.

During cross-examination of Officer Epolito, Appellant elicited testimony that the officer "drive stunned" Appellant with the Taser during the struggle on the ground. *Id.* at 58. The officer described a "drive stun" as "a secondary activation of the [T]aser" after the prongs have deployed and as "reengaging the [T]aser while placing the body of the [T]aser directly against the person who's being tased." *Id.* Appellant also presented a log for the Taser that

- 15 -

indicated it was engaged approximately ten times during the struggle. ***See***

Ex. D-1.

Before considering Appellant's specific arguments regarding the offenses, we restate the principles governing our review.

> "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt.

> > In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015) (citations omitted).

*Aggravated and Simple Assault*

Appellant argues that the evidence was insufficient to convict him of aggravated and simple assault. Appellant argues that the testimony as a whole failed to establish that he acted aggressively or violently. Appellant's

Brief at 30. Appellant insists that his actions were defensive and attempts "to avoid the effects" of the multiple times Officer Epolito deployed or attempted to deploy his Taser. **Id.** Appellant notes that Officer Epolito's initial reports of the incident indicated that Appellant only attempted to punch the officer once. **Id.** at 27. In sum, Appellant claims that the Commonwealth failed to establish that Appellant caused or intended to inflict bodily injury on the officer.[5]

Section 2702(a)(3) of the Crimes Code defines aggravated assault as follows: "A person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." 18 Pa.C.S. § 2702(a)(3). The definition of protected "officers" under Section 2702(a)(3) includes police officers. 18 Pa.C.S. § 2702(c)(1). Section 2701(a)(1) defines simple assault as: "a person is guilty of assault if he: (1)

---

[5] Appellant briefly refers to self-defense when discussing the sufficiency of the evidence regarding aggravated and simple assault. Appellant's Brief at 26. We note, however, that self-defense is generally not available "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." **See** 18 Pa.C.S. § 505(b)(1)(i). "[T]he only circumstance under which the law will contemplate physical resistance to a police officer is when the officer unnecessarily uses unlawfully excessive or deadly force which triggers the right of self-defense." **Commonwealth v. Biagini**, 655 A.2d 492, 499 (Pa. 1995). Although Appellant challenges the basis for an arrest, he does not develop a claim that Officer Epolito used unlawful force to accomplish an arrest. Therefore, Appellant's passing reference to self-defense when challenging the sufficiency of the evidence merits no relief.

attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]"[6]  18 Pa.C.S. § 2701(a)(1).

Because both Sections 2702(a)(3) and 2701(a)(1) refer to attempts to cause bodily injury, the Commonwealth need not show that a complainant suffered an actual injury.  **Commonwealth v. Brown**, 23 A.3d 544, 560 (Pa. Super. 2011) (*en banc*).  Instead, convictions under Sections 2702(a)(3) and 2701(a)(1) may be established be showing that a defendant had the specific intent to cause bodily injury and took a substantial step toward causing bodily injury.  **See id.**  "Bodily injury" means an "[i]mpairment of physical condition or substantial pain."  18 Pa.C.S. § 2301.

Reviewing the record in a light most favorable to the Commonwealth as the verdict winner, Officer Epolito testified that Appellant grabbed the officer's Taser, attempted to wrestle the weapon away from him, and attempted to punch him several times.  N.T. Trial at 40-41.  Although the officer testified that he managed to deflect Appellant's punches and did not suffer bodily injury, there was ample basis for the jury to conclude that Appellant attempted to cause substantial pain.  **See Brown**, 23 A.3d at 560.

*Disarming a Police Officer*

---

[6] This Court has noted that "[l]ogically speaking, a simple assault committed against a police officer in the performance of his duties would satisfy the elements of § 2702(a)(3)."  **Commonwealth v. Rahman**, 75 A.3d 497, 501 (Pa. Super. 2013)

Appellant next argues that the conviction for disarming a police officer must be vacated. According to Appellant:

During the entire encounter, he never attempted to reach for the officer's gun, and the alleged attempt to grab Officer Epolito's [T]aser or [T]aser hand/arm occurred when the [the officer] pushed [him] to the ground and he was falling backwards and reached for the [o]fficer to try to stop from falling to the ground. The actions [he] took are best described as defensive or to avoid injury and cannot be labeled affirmative acts to remove the [T]aser.

Appellant's Brief at 31. As with his challenge to the sufficiency of the assault convictions, Appellant suggests that the Commonwealth failed to prove his intent to remove the Taser from Officer Epolito.

Section 5104.1(a) states:

A person commits the offense of disarming a law enforcement officer if he:

(1) without lawful authorization, removes or attempts to remove a firearm, rifle, shotgun or weapon from the person of a law enforcement officer or corrections officer, or deprives a law enforcement officer or corrections officer of the use of a firearm, rifle, shotgun or weapon, when the officer is acting within the scope of the officer's duties; and

(2) has reasonable cause to know or knows that the individual is a law enforcement officer or corrections officer.

18 Pa.C.S. § 5104.1(a).

Instantly, the Commonwealth presented evidence that Appellant, while attempting to punch the officer, "continued to try and wrestle that [T]aser away from" Officer Epolito. N.T. Trial at 40. The jury was entitled to credit that evidence and conclude that Appellant intended to remove the officer's

weapon.  *See Tejada*, 107 A.3d at 792–93.  Thus, Appellant's claim warrants

no relief.

*Resisting Arrest*

Appellant's final sufficiency of the evidence argument focuses on

resisting arrest.  Appellant relies on the arguments he set forth in support of

his suppression claim to assert that Officer Epolito lacked probable cause to

arrest him.  He cites *Commonwealth v. Hock*, 728 A.2d 943 (Pa. 1999), for

the proposition that a valid charge of resisting arrest requires that the

underlying arrest be lawful.  *Id.* at 30.  Alternatively, Appellant suggests that

his conduct did not rise to a sufficient level to sustain a conviction for resisting

arrest.  Rather, Appellant maintains that he "engaged in a minor scuffle with

police."  *Id.* (citing *Commonwealth v. Eberhardt*, 450 A.2d 651 (Pa. Super.

1982); *Commonwealth v. Rainey*, 426 A.2d 1148 (Pa. Super. 1981)).

> Section 5104 defines the crime of resisting arrest as follows:
>
> A person commits a misdemeanor of the second degree if, with
> the intent of preventing a public servant from effecting a lawful
> arrest or discharging any other duty, the person creates a
> substantial risk of bodily injury to the public servant or anyone
> else, or employs means justifying or requiring substantial force to
> overcome the resistance.

18 Pa.C.S. § 5104.

Section 5104 criminalizes two types of conduct intended to prevent a

lawful arrest: the creation of a substantial risk of bodily injury to the officer or

anyone else **or** means justifying or requiring a substantial force to overcome.

*See* 18 Pa.C.S. § 5104; *Commonwealth v. Thompson*, 922 A.2d 926, 928

(Pa. Super. 2007) (noting that Section 5104 criminalizes resistance that requires substantial force to surmount and rejecting the defendant's claim that the defendant's "passive resistance" did not amount to resisting arrest); *Eberhardt*, 450 A.2d at 652 (noting that Section 5104 contains "disjunctive" provisions).

In *Rainey*, this Court reversed a resisting arrest conviction when the defendant squirmed and twisted in an attempt to "shake off" a police officer's arm. *Rainey*, 426 A.2d at 1150. In *Eberhardt*, this Court specifically concluded that a defendant's struggle did not create a substantial risk of bodily injury even though an officer suffered a bruise on his arm during an extended struggle.[7] *Eberhardt*, 450 A.2d at 653.

---

[7] More specifically, the *Eberhardt* Court summarized the relevant facts regarding the police's attempts to arrest the defendant at his home after finding the defendant lying under a bed on the second floor of his residence:

> After the officers removed [the defendant] from underneath the bed, he began to scuffle with them, claiming he was not Anthony Eberhardt. The scuffle proceeded into the living room and then downstairs into the dining room. During the scuffle, much furniture was overturned and one of the officers sustained a bruise on his forearm. [The defendant], finally breaking free, darted to the third floor of the home, exited through a window onto a porch, and successfully fled the area. Three days later, [the defendant] was located on the Northside of Pittsburgh and was placed under arrest, without incident, by police officers.

*Eberhardt*, 450 A.2d at 652. Despite the substantial efforts exerted to overcome the defendant's resistance, the *Eberhardt* Court confined its analysis to whether the defendant's conduct created a substantial risk of bodily injury. *Id.*

- 21 -

By contrast, in **Thompson**, this Court affirmed a resisting arrest conviction based on the fact that the defendant's conduct—interlocking her limbs with her husband's limbs—required substantial force to overcome the resistance. **Thompson**, 922 A.2d at 928. In **Commonwealth v. Miller**, 475 A.2d 145, 147 (Pa. Super. 1984), this Court affirmed a resisting arrest conviction when the defendant attempted to free himself from two police officers to assist his brother and later, as officers attempted to handcuff him, the defendant "resisted their efforts by 'straining' against them with his arms and the upper part of his body." **Miller**, 475 A.2d at 147. The officers were required to pick the defendant up and push him into police car. **Id.**

It is well settled, however, that "a valid charge of resisting arrest requires an underlying lawful arrest, which, in turn, requires that the arresting officer possess probable cause." **Hock**, 728 A.2d at 946 (citation omitted). In **Hock**, the Pennsylvania Supreme Court reversed the defendant's conviction for resisting arrest because the defendant's use of a single curse word did not give rise to probable cause for disorderly conduct. **Id.** at 946 (noting that the defendant's use of a "single epithet, uttered in a normal tone of voice while walking away from a police officer, did not alarm or frighten him, and there were no bystanders").

Instantly, we have previously concluded that the trial court's suppression rulings regarding Officer Epolito's pursuit, detention, and arrest of Appellant were proper. The same reasoning applies here, and we discern

no merit to Appellant's contention that his resisting arrest conviction arose from an illegal arrest.

As to Appellant's alternative argument, Appellant's attempts to equate his conduct to those in **Rainey** warrant no relief.  Unlike the defendant, in **Rainey**, who twisted and squirmed to "shake off" a police officer's arm, Appellant attempted to take a police officer's Taser and punch him. Appellant's conduct presented both a substantial risk of injury to the officer and required substantial force to overcome.  **See Miller**, 475 A.2d at 147. Thus, Appellant's challenge to the conviction for resisting arrest fails.

In sum, we conclude that Appellant's challenges to the sufficiency of the evidence are meritless.

**Weight**

Appellant next contends that the verdicts were against the weight of the evidence.  In support, Appellant reproduces his post-sentence motion preserving the claims and setting forth his arguments.[8]  Appellant's Brief at 40-41.  He then concludes that he is entitled to a new trial.  **Id.** at 42.

It is well settled that

_____

[8] We note Appellant reproduces his post-sentence motion challenging the weight of the evidence.  **See** Appellant's Brief at 40-41.  Although the trial court denied Appellant's post-sentence motion challenging the weight of the evidence, it did not author an opinion detailing its reasons.  Moreover, the trial court's Rule 1925(a) opinion did not respond to the weight of the evidence claim raised in Appellant's Rule 1925(b) statement.  In light of these factors, we decline to find waiver of Appellant's weight of the evidence claim.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not

> applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and emphasis omitted).

Instantly, it is apparent that Appellant's weight of the evidence claim rests on the same arguments that he raised in support of his challenges to the sufficiency of the evidence. Specifically, he alleges his arrest was unlawful, he was justified in his attempt to flee from Officer Epolito, and his resistance to Officer Epolito was not assaultive. Appellant's Brief at 41. Appellant merely suggests an interpretation of the trial evidence in a light most favorable to him.

However, nothing in the record suggests that Appellant's interpretation of the evidence was of such greater weight that it would deny justice. Therefore, we discern no basis to disturb the trial court's ruling denying Appellant's weight of the evidence claim. *See Clay*, 64 A.3d at 1054-55.

### Jury Instruction

Appellant next claims that the trial court erred in refusing to charge the jury on the authority of police officers to make a lawful arrest for an accident involving damage to an unattended vehicle. By way of background, Appellant submitted requested jury instructions that included two points regarding resisting arrest. Requested Points for Charge, 9/21/17, ¶¶ 2(C)-(D). Of relevance to this appeal, Paragraph 2(C) read:

> Police officers have authority to make a lawful arrest for "hit and run" otherwise known as leaving the scene of an accident after hitting an unattended vehicle when the accident occurs in the presence of an officer. ***Commonwealth v. Karl***, 476 A.2d 908, 909 (Pa. Super. 1984).

*Id.* at ¶ 2C.  At the charging conference, the Commonwealth did not object to Appellant's request under Paragraph 2(C).  N.T. Trial at 215.

During closing arguments, Appellant asserted that Officer Epolito could have issued Appellant a citation and should not have attempted to arrest Appellant.  ***See id.*** at 307-08.  The Commonwealth responded that the officer's conduct was proper in light of Appellant's flight from the scene.  *Id.* at 325.

The trial court's charge to the jury, however, did not include an instruction requested in Paragraph 2(C).  When the trial court asked for any additions or corrections to its charge, Appellant specifically objected to the failure to instruct on Paragraph 2(C) of his requested instructions.  *Id.* at 360.  The trial court indicated that it reconsidered giving the requested instruction under Paragraph 2(C), and acknowledged Appellant's objection.  *Id.*

Appellant presently argues that he was entitled to the instruction he requested under Paragraph 2(C).  Appellant notes that he initially requested the charge, and that the trial court appeared to accept his request.  Appellant's Brief at 38.  He further notes that he and the Commonwealth both argued about whether an arrest for an accident involving damage to an unattended vehicle was proper under the circumstances of the case.  *Id.*  Before charging

the jury, however, the trial court denied Appellant's request for the charge and refused to issue it.[9] *Id.*

Our review is governed by the following principles:

In reviewing a jury charge, we determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. "Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." Moreover,

it is well-settled that "the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties, and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal."

*Commonwealth v. Wise*, 171 A.3d 784, 787-88 (Pa. Super. 2017) (citations and brackets omitted), *appeal denied*, 186 A.3d 939 (Pa. 2018). A defendant "may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (citation omitted).

In *Karl*, this Court vacated a conviction for resisting arrest. In that case, the defendant struck another vehicle and drove away from the scene of the accident before the police responded. *Karl*, 476 A.2d at 910. When the

_____

[9] We note that the trial court and the Commonwealth have both argued that a justification instruction was not necessary when responding to Appellant's claim. It is apparent, however, from Appellant's trial objection and his Rule 1925(b) statement that Appellant intended to challenge the failure to issue the requested Paragraph 2(C) instruction.

police arrived at the scene, they began questioning the owner of the struck vehicle, and the defendant returned to the scene on foot. *Id.* The owner of the struck vehicle and another witness identified the defendant as the driver of the striking vehicle. *Id.* The police chased the defendant and detained him as he was about to enter his vehicle. *Id.* The police obtained his identification and then placed him under arrest. *Id.* The police brought the defendant back to the scene and attempted to place him in the backseat of a police cruiser, but a struggle ensued. *Id.*

In vacating the defendant's resisting arrest conviction, this Court reasoned:

> In this case there is no evidence to show that the arrest underlying the resisting arrest charge was lawful. In fact both parties and the trial court agree that the York police officers did not have the authority to make a lawful arrest for "hit and run"—that is, leaving the scene of an accident after hitting an attended vehicle—because **the incident** did not occur in the presence of the officers. Under such circumstances, the appellant could not, as a matter of law, be convicted under the provisions of § 5104 pertaining to lawful arrest.

*Id.* at 911 (emphasis added).

Following our review, we discern no merit to Appellant's contention that he was entitled to the requested instruction based on *Karl*. Contrary to Appellant's suggestion, *Karl* does not stand for the proposition that an officer must personally observe the actual accident between the two cars. Here, unlike *Karl*, the evidence in this case showed that Officer Epolito received a report that Appellant was the driver of the striking vehicle and observed

- 28 -

Appellant fleeing the scene of an accident. Accordingly, Appellant failed to establish that the evidence presented at trial required his requested instruction.

Moreover, although the trial court suggested that it would give the requested instruction, Appellant failed to establish actual prejudice based on the trial court's failure. Therefore, Appellant has not demonstrated reversible error.

**Evidentiary Issues**

Appellant's final two issues challenge the trial court's rulings denying his motions *in limine* to (1) preclude the Commonwealth's witnesses from referencing the statement that Appellant was on parole and (2) exclude evidence about the cocaine recovered after Appellant's arrest based on an improper chain of custody.

The standards governing our review are as follows.

> Generally, a trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. In this context,
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Reese***, 31 A.3d 708, 715-16 (Pa. Super. 2011) (*en banc*) (citations omitted). The trial court's evidentiary ruling may be affirmed on a different basis that is apparent from the record. ***Commonwealth v. Johnson***, 160 A.3d 127, 144 n.15 (Pa. 2017), *cert. denied*, 138 S. Ct. 508 (2017).

*Parole*

Appellant asserts that the trial court erred in denying his motion *in limine* to preclude statements that he was on parole. A review of the record reveals that there were two statements that referred to Appellant's parole status. First, as noted above, Officer Epolito received information from the women at the accident scene that Appellant told them he was on parole before fleeing. N.T. Trial at 35. Second, after Appellant was transported to the hospital, Appellant told Officer Victor Morrison that following the accident, he ran from the scene because he was on parole and had cocaine on him. ***Id.*** at 106.

Appellant's counsel, in support of his motion *in limine*, argued that the statements referring to his parole status at the time of the accident constituted hearsay and were prejudicial because it implicated his prior bad acts. ***Id.*** at 5-6. The Commonwealth responded that Officer Epolito could testify that the female's statement under the excited utterance or present sense impression exceptions to the general rule against hearsay. ***Id.*** at 6. Additionally, the Commonwealth asserted that Officer Morrison could testify as to Appellant's statement at the hospital as a party admission. ***Id.*** at 7. The Commonwealth

asserted that the statements were relevant to establish motive for Appellant's flight from the accident scene. *Id.*

The trial court, in its Rule 1925(a) opinion, focused on the statements relayed to Officer Epolito. *See* Trial Ct. Op. at 12. The court suggested that the reference to Appellant's parole status was relevant because it was not offered to show that Appellant was on parole, but to establish Officer Epolito's basis for pursuing Appellant. *Id.* The court also suggested that the testimony merely established the officers' and the witnesses' states of mind at the time of the incident. *Id.*

On appeal, Appellant argues that the trial court abused its discretion in permitting these references to his parole status, because his parole status was not relevant to the charges. Appellant's Brief at 35. Appellant further contends that the trial court erred by failing to consider the prejudice resulting from the reference to prior bad acts under Pa.R.E. 404(b). *Id.* at 35-36.

This Court has stated:

> Due to its prejudicial impact, evidence indicating that the defendant had previously been convicted of other crimes generally is not admissible, especially when offered to prove the character of the defendant or action in conformity with that character. However, evidence of other crimes may be admissible when the need for such evidence outweighs its prejudicial effects, such as when offered to prove motive, intent, absence of mistake, common plan or scheme, or the identity of the person accused.

*Commonwealth v. Moore*, 715 A.2d 448, 451 (Pa. Super. 1998) (citations omitted); *see also* Pa.R.E. 404(b)(2); *Commonwealth v. Matthews*, 783 A.2d 338, 340-42 (Pa. Super. 2001) (concluding trial counsel was ineffective

for failing to object to testimony that a defendant spoke to his parole officer because the prejudice outweighed the relevance of the Commonwealth's rebuttal evidence).

Instantly, the references to Appellant's parole status were relevant to explain his flight from the accident scene and show motive for his attempts to avoid the police. *See Commonwealth v. Mollett*, 5 A.3d 291, 307 (Pa. Super. 2010) (indicating evidence that a defendant was on parole may tend to establish the defendant's motive to avoid being captured). Moreover, having reviewed the record, we agree that the two references to Appellant's status as a parolee were not so unfairly prejudicial as to outweigh the relevance of the evidence.[10] Accordingly, we discern no basis to disturb the trial court's denial of Appellant's motion to preclude the references to his parole status.

*Chain of Custody*

Appellant lastly contends that the trial court erred in permitting the Commonwealth to admit evidence regarding the testing of the cocaine recovered from him after his arrest. Appellant's claim focuses on Jody B. Royer, a former police officer in the Evidence Section of the Reading Police Department.

---

[10] Indeed, even if there were error, we would find it harmless based on the overwhelming evidence of Appellant's guilt. *See Hairston*, 84 A.3d at 671-72.

By way of background to this claim, Appellant preserved his chain-of-custody objection in a pretrial motion. The trial court held a pretrial hearing at which Appellant called Lieutenant Kyle Rentschler, Royer's supervisor. Lieutenant Rentschler testified that Royer was responsible for retrieving evidence from a temporary storage locker, logging it into the computer, securing evidence, and transporting evidence to and from the Pennsylvania State Police (PSP) laboratory for testing. N.T. Pretrial Hr'g, 4/12/17, at 9, 15.

Appellant elicited evidence that Royer was convicted for stealing money from evidence.[11] An investigation into Royer began in 2014 when it was discovered he failed to log and secure marijuana and had taken money seized in connection with that case. Audits conducted in 2014 revealed that money from several different cases was taken from the evidence room. Although the audit did not show drugs were missing, the audit was conducted after the evidence from Appellant's case would have been processed through the Evidence Section. It was undisputed that Royer was charged in 2014, pled guilty to theft by unlawful taking in 2016, and was responsible for retrieving, logging, and transporting the suspected cocaine taken from Appellant.

The trial court reserved ruling on Appellant's motion until trial. At trial, the Commonwealth presented the following evidence regarding the chain of custody. Officer Morar, who transported Appellant from the accident scene to

---

[11] Appellant notes that there was evidence presented at the pre-trial hearing that Royer's work station was unorganized and that he reacted poorly to criticism.

the hospital, testified he searched Appellant before placing him inside the police wagon and recovered the plastic bags containing the suspected cocaine. N.T. Trial at 88-89. Officer Morar gave the suspected cocaine to Officer Morrison at the hospital. Officer Morrison photographed the suspected cocaine, placed it in a bag, and sealed the bag. *Id.* at 106-112.

After the evidence was transported to the Pennsylvania State Police laboratory by Royer, the laboratory technician noted that there were no indications that the seal on the drug evidence had been broken. *Id.* at 162-163. Testing revealed that the contraband was cocaine, weighed approximately four grams, and was contained in thirty-two plastic packets.

The trial court, in its Rule 1925(a) opinion, explained its decision to deny Appellant's motion as follows:

> The chain of custody was not broken. The evidence presented in court showed that Officer Royer did not tamper with the evidence of this case and that all seals on the drug evidence were intact or properly opened in the course of official police or court business. There were no unauthorized breaks in the evidence packaging, all labels were in place, and all identification markings showed a consistent chain of custody from evidence seizure to testing to presentation in court.

Trial Ct. Op., 1/10/18, at 14.

On appeal, Appellant asserts that the trial court erred in admitting the evidence of the cocaine over his objection to the chain of custody. Appellant argues that the Commonwealth failed "to establish that the items transported to the PSP lab for testing in this case were in fact the ones possessed by

Appellant on the date in question or that those substances were properly stored by Royer." Appellant's Brief at 47.

The principles governing our review are well settled.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Critically, "[p]hysical evidence may be properly admitted despite gaps in testimony regarding custody." Furthermore, any issue regarding gaps in the chain of custody relate to the weight of the evidence, not its admissibility.

*Commonwealth v. Witmayer*, 144 A.3d 939, 950 (Pa. Super. 2016) (citations omitted), *appeal denied*, 169 A.3d 27 (Pa. 2017).

Instantly, the Commonwealth produced photographs of the contraband taken shortly after Appellant's arrest and elicited testimony establishing that the bag containing the contraband was sealed by Officer Morrison and was received by the PSP lab with the seal intact. That evidence provided a foundation to establish that the cocaine presented at trial was identical to the contraband taken from Appellant at the time of his arrest and tested at the PSP laboratory. Although Appellant raised the possibility that Royer could have tampered with the contraband, those allegations went to the weight— not the admissibility—of the evidence as to whether Appellant was in possession of cocaine at the time of his arrest. *See id.* Accordingly, we discern no basis to conclude that the trial court abused its discretion when overruling Appellant's chain of custody objection. *See Reese*, 31 A.3d at 715-16.

In sum, having reviewed Appellant's claims, we find no basis to disturb his conviction or to award a new trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/28/2018</u>