J-S23040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY LEONARD | : | |
| | : | |
| Appellant | : | No. 1680 WDA 2018 |

Appeal from the Judgment of Sentence Entered November 15, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000215-2018

BEFORE: BENDER, P.J.E., NICHOLS, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED JUNE 26, 2019**

Appellant, Zachary Leonard, appeals from the judgment of sentence of six to twenty-four months confinement, which was imposed following his convictions, after a jury trial on November 6, 2018, of receiving stolen property, resisting arrest, disorderly conduct, and use/possession of drug paraphernalia.[1] Appellant was sentenced on his conviction for receiving stolen property, and he received no further penalties for the additional convictions. After careful consideration, we affirm.

The facts underlying this appeal are as follows:

On November 20, 2017, Captain William Huss of the City of Connellsville Police Department was called to respond to a potential theft from a motor vehicle. Captain Huss responded along with Corporal Hominsky to a business located at 204 East

---

[1] 18 Pa. C.S. §§ 3925(a), 5104, and 5503(a)(4), and 35 Pa. C.S. § 780-113(A)(32), respectively. Appellant was also charged with, and found not guilty of, theft from a motor vehicle, 18 Pa. C.S. § 3934(A).

---

\* Retired Senior Judge assigned to the Superior Court.

Crawford Avenue for report of a theft from a vehicle. Captain Huss spoke with Erica Shroyer who alleged that her purse was stolen from her vehicle. Captain Huss learned that the purse [had a camouflage pattern] and contained approximately six hundred dollars ($600) in cash, as well as credit cards, her driver's license, and additional small items. Ms. Shroyer provided information to the officers indicating that the Appellant was potentially responsible for the theft. Captain Huss and Corporal Hominsky proceeded to search the area for Appellant. While performing this search, the officers received a call from Fayette County 911 reporting that there was a male subject on the rear roof top of a building located at 409 South Arch Street in Connellsville. This location is approximately one half mile from 204 East Crawford Avenue. Captain Huss and Corporal Hominsky proceeded to the Arch Street address where they observed Appellant on the roof ledge of the two-story house wrapped in a blanket.

The officers proceeded to enter the residence through the front. At this time, they also notified the local fire department as well as Fayette EMS in the event that Appellant either jumped or slipped off the roof. The officers proceeded to the second floor and began speaking to Appellant in an attempt to convince him to come off the roof. After approximately thirty-five (35) minutes, Appellant did come inside. Once Appellant was safely off the roof, he was searched, read his Miranda Rights and placed into custody. Upon the search of Appellant, he was found to have on his person a spoon containing a white powder substance, a syringe, two phones, a wallet, a hundred-dollar bill and one two-dollar bill. Appellant was then transported to the Connellsville Police Station where he was questioned further. Appellant eventually told the officers the location of the camouflage purse. The purse was later found to be in the location described by Appellant.

Trial Court Opinion, filed January 16, 2019, at 2-4 (citations omitted). On

November 21, 2018, Appellant filed this timely direct appeal.[2]

Appellant presents the following issues for our review:

---

[2] Appellant filed his statement of errors complained of on appeal on December 14, 2018. The trial court entered its opinion on January 16, 2019.

1.     Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant did not possess the intent to return the purse and its contents to the rightful owner?

2.     Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant created a substantial risk of bodily injury to the police officers involved in apprehending him?

3.     Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant created a hazardous or physically offensive condition with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof?

Appellant's Brief at 7.

This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> ***Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa.Super.
> 2016)(quoting ***Commonwealth v. Tarrach***, 42 A.3d 342, 345
> (Pa.Super. 2012).

***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa.Super. 2017) (internal

brackets omitted).

Appellant first contends that the Commonwealth relied solely on a

witness' conflicting testimony to establish his possession of the purse, and

failed to establish that he was not going to return it to Ms. Shroyer had he

known where she was. We find this argument to be without merit.

"Receiving stolen property is established by proving that the accused

'intentionally receives, retains, or disposes of movable property of another

knowing that it has been stolen, or believing that it has probably been stolen,

unless the property is received, retained, or disposed of with intent to restore

it to the owner.' 18 Pa. C.S. § 3925(a)." ***Commonwealth v. Galvin***, 985 A.2d

783, 792 (Pa. 2009). The evidence to which Appellant refers is that provided

by a friend of his mother, who testified that shortly after the suspected theft

was reported, Appellant entered her home, located approximately six houses

away from the site where Ms. Shroyer's automobile was parked. N.T.,

November 6, 2018, at 24. She testified that she saw Appellant pulling items,

including an insurance card bearing Ms. Shroyer's name, from a purse with a

camouflage design. ***Id***. The witness indicated that Appellant pulled cash out

of the purse, which he stuffed into his coat and pant pockets, returned

remaining items to the purse and rushed out carrying the purse. ***Id***. at 24-

26. In addition, evidence regarding Appellant's possession of the purse was also provided via the testimony of Ms. Shroyer, who confronted Appellant following his arrest; she stated that he admitted to her at that time that he had taken her purse and later thrown it under the back porch steps of the home where it was found. *Id*. at 13-14. Further, the Captain of the Connellsville Police Department testified that following his arrest, Appellant himself provided the police with the specific location where the purse could be found. *Id*. at 41. Ms. Shroyer followed a police officer to her mother's friend's house and they located the purse underneath the porch of the house; the purse contained her identification cards and no cash. *Id*. at 14-15. As the trial court explained in its opinion, the evidence that Appellant provided the location of the purse taken from Ms. Shroyer's automobile, that had contained substantial cash, together with the evidence Appellant was found with a one hundred dollar bill and the cash had been removed from the purse, was sufficient, when considered with the entirety of the circumstances, for a reasonable jury to have found that Appellant lacked the intent to return the purse and all of its contents to its lawful owner. Trial Court Opinion at 5. We find this evidence more than sufficient to establish that Appellant possessed a purse he knew to belong to Ms. Shroyer, and that he did not intend to return it and its contents to her.

Appellant next argues that the evidence was insufficient to prove beyond a reasonable doubt that he committed the offense of resisting arrest.

Resisting arrest is established when a "person…with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty…**creates a substantial risk of bodily injury to the public servant or anyone else**, **or** employs means justifying or requiring substantial force to overcome the resistance. 18 Pa. C.S. § 5104 (emphasis supplied); ***Commonwealth v. Soto***, 202 A.3d 80, 95 (Pa. Super. 2018). Appellant states, correctly, that no substantial force was required to arrest Appellant; however, with regard to the first prong of the statute, i.e., whether he created a substantial risk of bodily injury to the officers, he asserts only that the Commonwealth failed to establish such risk beyond a reasonable doubt. The testimony of the Commonwealth witnesses confirms that following receipt of a dispatch call alerting them that a man was on the roof of a house on South Arch Street, police arrived at the scene to find Appellant on the roof ledge, wrapped in a blanket. The police captain testified that the police corporal who accompanied him was compelled to break the plane of the window that provided sole access to the roof top area, and that they "were trying to walk out to get him and he started walking further and further away from us," causing them to remain inside for fear that Appellant might jump or fall off the roof. N.T. at 44. The police captain stated that "clearly, [the police corporal] could have gotten cut by the glass because he did break the plane [sic] of that window in attempts to talk him off the ledge." *Id*. As the trial court noted, the possibility of necessitating officers climbing onto a second-

story roof top to apprehend a suspect was enough evidence for a reasonable jury to conclude that the officers were substantially at risk of bodily injury, given the likelihood of severe or even fatal injuries from a fall. We have held that the circumstances surrounding an arrest may create a substantial risk of bodily injury sufficient to prove resisting arrest. ***Commonwealth v. Lyons***, 555 A.2d 920, 925 (Pa. Super. 1989) (resisting arrest conviction upheld where while fleeing arrest, appellant ran into Lycoming Creek and tried to swim downstream, and deputies had to wade in to waist-deep, frigid water with a slippery stream bottom and swift current to apprehend him). Here, we find sufficient evidence proving beyond a reasonable doubt that Appellant created a substantial risk of bodily injury to the officers who pursued him when he retreated to a rooftop ledge.

Finally, Appellant contends that the Commonwealth's evidence was insufficient for a finding of guilt beyond a reasonable doubt of disorderly conduct. The Pennsylvania Crimes Code defines disorderly conduct as follows:

§ 5503. Disorderly conduct

(a)  Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
 * *

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

(b) Grading. –An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after

reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

(c) Definition.-As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa. C.S. § 5503(a)(4)-(c). *Commonwealth v. Fedorek*, 946 A.2d 93, 96 (Pa. 2008). We have defined the term 'hazardous condition' in subsection (a)(4) as "a condition that involves danger or risk, particularly of injuries resulting from public disorders." *Commonwealth v. N.M.C.*, 172 A.3d 1146, 1150 (Pa. Super. 2017) (citation, quotation marks, and brackets omitted). A physically offensive condition, within the meaning of § 5503(a)(4) "encompasses direct assaults on the physical senses of members of the public." *Commonwealth v. Mauz*, 122 A.3d 1039, 1042 (Pa. Super. 2015) (quoting *Commonwealth v. Williams*, 574 A.2d 1161, 1164 (Pa. Super. 1990)).

Here, Appellant argues only that he performed no act that could have created a hazardous or physically offensive condition and that his act, of merely standing on the roof where he had every right to be, could not be seen as having created a risk of public inconvenience because he was not in a public place. (Appellant's Brief at 11, 17.) We find both arguments to be without merit. The record evidence established that police officers arrived at the scene to find Appellant standing atop a second story roof, wrapped in a blanket,

visible to the public from the street below.  They immediately alerted and summoned both the fire department and EMS to the scene, fearing he might jump or fall off the roof ledge.  Appellant did not merely "walk out onto a roof," as he alleged, but rather he actively resisted the police officers' entreaties to come off the roof, continually moving backwards, closer to the edge, as they attempted to approach him, and persisted in this conduct for a period of approximately thirty-five minutes.  As the trial court noted, it was entirely reasonable that a trier of fact could find that Appellant's behavior was "unruly" and resulted in a scene that might "very well be described as tumultuous." Trial Court Opinion at 6. **See Commonwealth v. Hock**, 728 A.2d 943, 946 (Pa. 2008) ("The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.").

We find that Appellant's actions created a hazardous condition - to himself, to bystanders below, and to EMS, firemen, and policemen assembled at the scene.  Appellant's resistance to police attempts to talk him down from the roof created a condition fraught with danger; moreover, the spectre of a man falling from a roof would clearly constitute a direct assault on the physical senses of a witness below.  Appellant's argument that he was not in a public place, and could not therefore have created a public inconvenience is without support.  We have held that the roof top on which Appellant's charged conduct occurred was "public" within the meaning of the disorderly conduct statute. **Commonwealth v. O'Brien**, 939 A.2d 912, 914 (Pa. Super. 2007).

Instantly, we are not confronted with a situation wherein Appellant was on his own private property. While not on public property, Appellant was standing on the roof ledge, visible to neighbors and bystanders on the street below as well as all of the emergency personnel. Applying the statutory definition of "public" to the circumstances of Appellant's more than half-hour stand down with the police and eventual arrest, it is clear that he could legitimately be charged with recklessly creating a risk of public inconvenience, annoyance or alarm.

In summary, we conclude that the evidence is sufficient to establish the offenses of receiving stolen property, resisting arrest, and disorderly conduct.[3] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2019

---

[3] We were not asked to consider the sufficiency of the evidence to establish use/possession of drug paraphernalia.