J-S57006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL DAVID MARCHALK | : | |
| | : | |
| Appellant | : | No. 149 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 22, 2019
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0001407-2017

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 25, 2019**

Michael David Marchalk appeals from the judgment of sentence of twenty-four and one-half to forty-nine years of imprisonment imposed after a jury convicted him of third-degree murder, theft by unlawful taking, access device fraud, and possession of an instrument of crime.  We affirm.

The facts of this case are largely undisputed.  During the whole of his life, Appellant, a drug addict, had a strained relationship with his father, who, while supportive financially, was allegedly verbally abusive.  While staying at his father's home the night before beginning rehab, Appellant beat his father to death with a baseball bat, took his father's wallet and car, and stopped several times to get cash out of ATMs while fleeing to Philadelphia.  Appellant was arrested in Atlantic City, New Jersey a few days later.  In addition to the counts listed above, Appellant was charged with murder in the first and second degrees.

The Commonwealth's theory of the case, supported by, *inter alia*, the testimony of Appellant's brother that Appellant in the past had spoken about killing his father, was that Appellant murdered him for the purpose of obtaining drug money. Appellant testified that he went into his father's room that night complaining about being unable to sleep, his father twice took swings at Appellant with the bat, and Appellant took the bat from him and killed him in the heat of passion.

Based upon Appellant's testimony, the trial court granted his request that the jury be instructed as to voluntary manslaughter. During the jury charge, the trial court explained that "a killing is without malice if the perpetrator acts under circumstances that reduce the killing to voluntary manslaughter." N.T. Trial Vol. II, 12/13/18, at 569. The court went on to instruct the jury that it was permitted to find Appellant guilty of murder only if it was satisfied beyond a reasonable doubt that Appellant was not acting under a sudden and intense passion resulting from the victim's serious provocation, and elaborated on the relevant concepts. ***See id***. at 574-76.

Upon receiving questions from the jury several hours into their deliberations, the trial court repeated its instructions as to the various degrees of murder and voluntary manslaughter. ***Id***. at 601-05. One hour after the jury was sent back out, Appellant expressed concern that the most recent instructions had not included a particular section of the suggested instructions, and requested that the court clarify to the jury that, when considering whether

the Commonwealth proved malice, it "must take into account any evidence that the Defendant acted in the heat of passion." *Id*. at 607-08. The trial court declined the request, opining that it had conveyed the information to the jury albeit "[n]ot in those exact words." *Id*. at 608. Approximately three hours later, the jury returned with the guilty verdicts detailed *supra*, acquitting Appellant of murder in the first and second degrees.

On January 22, 2019, Appellant was sentenced as indicated above, and this timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents one question for our determination: "Whether [Appellant] was prejudiced after the court gave the 'progression' charge but failed to sufficiently clarify that the jury must initially consider evidence of 'heat of passion' with regard to malice in relation to any conviction for any level of murder?" Appellant's brief at 6.

We begin with our standard of review:

> In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations.

*Commonwealth v. Soto*, 202 A.3d 80, 98 (Pa.Super. 2018) (cleaned up).

The Suggested Standard Jury Instruction on voluntary manslaughter provides that: "(1) when the defendant kills in a heat of passion following serious provocation, the killing 'may be voluntary manslaughter, but never

- 3 -

murder;' and (2) the jury can find malice and murder only if it is satisfied that the defendant was not acting 'under a sudden and intense passion resulting from serious provocation by the victim.'" ***Commonwealth v. Patton***, 936 A.2d 1170, 1177-78 (Pa.Super. 2007), *aff'd following grant of appeal on other issues*, 985 A.2d 1283 (Pa. 2009) (citing Pennsylvania Suggested Standard Jury Instructions (Criminal) 15.2503A).

Appellant concedes that the trial court's instructions "correctly [set] forth the elements and requirements of [v]oluntary [m]anslaughter[.]" Appellant's brief at 12. However, he contends that the court did not make clear "that whether or not the defendant was acting under the 'heat of passion' must be considered at the outset and not only after deliberating and reaching a verdict on" the murder counts. ***Id***.

After a thorough review of the certified record, the parties' briefs and the pertinent law, we discern no abuse of discretion on the part of the trial court as to Appellant's issue, and we affirm the judgment of sentence on the basis of the cogent and well-reasoned opinion that Honorable William E. Baldwin entered on April 26, 2019. Specifically, Judge Baldwin extensively detailed the instructions given to the jury, supporting his opinion that he, on at least four occasions, clearly informed the jury that "the malice necessary for murder could not be found unless the jurors were convinced beyond a reasonable doubt that the defendant was not acting in the heat of passion as provoked by the victim." Trial Court Opinion, 4/26/19, at 10. As the trial

court's determination is the product of neither an error of law or other abuse of discretion, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2019

Circulated 10/24/2019 04:10 PM

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY--CRIMINAL

COMMONWEALTH OF PENNSYLVANIA   :     NO.   CR-1407-2017

            vs.               :

MICHAEL MARCHALK,          :
           Defendant      :

Rebecca Elo, Esquire, Deputy Attorney General - for the Commonwealth
Christopher P. Phillips, Esquire, Deputy Attorney General - for the Commonwealth
Andrea L. Thompson, Esquire - for Defendant

## *OPINION OF COURT PURSUANT TO Pa.R.A.P. 1925*

BALDWIN, P.J.

On December 13, 2018, a jury found Michael Marchalk guilty of third degree

murder in the death of his father, Gary Marchalk. He was also found guilty of theft

offenses related to the theft of his father's car to get away and the use of his father's

credit card to obtain cash, as well as possessing the instrument of a crime, the baseball bat

with which he bludgeoned his father.

Marchalk was sentenced to 20 to 40 years for third degree murder and a

consecutive 4½ to 9 years for the other offenses. He has appealed his conviction, and in

his Rule 1925(b) statement, his sole challenge is to the Court's instructions to the jury

related to evidence of the heat of passion and the Commonwealth's duty to prove the

absence of heat of passion, which could reduce the killing from murder to voluntary

manslaughter. A summary of the evidence might be helpful in understanding the context of the required instruction.

The defendant's parents were pressured into marrying by his maternal grandparents when it was discovered that the mother was pregnant with the defendant. The couple later had another son, Matthew. Growing up, the defendant was very close to his mother, but his relationship with his father was strained. The father, was very critical of the defendant and never satisfied with his achievements. He showed no warmth or affection toward the defendant, and the defendant felt that the father favored his younger brother.

When the defendant was seventeen, his mother committed suicide, and he was the one who found her. Thereafter, the relationship between the defendant and his father became even more strained. The defendant began drinking heavily and transitioned into becoming addicted to heroin. His drug use led to arrests, including a conviction for attempted bank robbery and a state prison sentence.

After prison, the defendant lived awhile in the Pittsburgh area before returning to Schuylkill County. Although the father may not have provided emotional support to the defendant, he did support the defendant financially, making sure that he had a place to live.

The killing occurred on a Sunday evening. The Friday before, the defendant visited his father at his work to ask for help getting into a rehab. While there,

2

arrangements were made for the defendant to go to a facility on that Monday. Gary Marchalk invited his son to stay with him until then.

By Sunday afternoon, the defendant was experiencing withdrawal symptoms, and he asked his father for money to purchase suboxone or heroin so he would not be sick entering the rehab. Father became angry and ordered him to leave, but then gave the defendant the little money he had in his wallet, approximately $39.

The defendant's efforts to get suboxone or heroin were unsuccessful, but he did buy and smoke some crack cocaine. When he returned to his father's house, Gary Marchalk first told him to leave but then opened the door for him. They talked briefly downstairs before his father told him to go to bed and went upstairs to his own bedroom.

Shortly thereafter, the defendant went upstairs and into his father's room. The father was lying on his bed watching television with a baseball bat next to him on the bed. He always kept the bat in his room to use should someone break into the house.

According to the defendant, his father told him to go to bed. Instead he walked toward the bed saying that he could not sleep. His father abruptly sat up and swung the bat at him, but he blocked it with his arm. The defendant grabbed an iron from the ironing board near the bed and threw it against the wall above the bed. It fell harmlessly on the bed. The father moved back on the bed, and the defendant charged him. Again the father hit the defendant with the bat, but this time the defendant took it away from him and used it to strike the father five or six times, killing him.

3

Samuel Land, the forensic pathologist who had performed the autopsy of the father's body, described finding multiple fractures of the right forehead, temporal bone, and parietal bone. There were also multiple facial fractures. The jaw was fractured, and the teeth had lacerated the mouth. The base of the skull was shattered, and there was crush trauma to the right side of the brain. There was also bruising to the upper back. The blood splatters on the walls, together with the injuries, indicated that the bloody bat found at the scene was swung with significant force.

When asked by his counsel why he hit his father with the bat after he had taken it from him, he responded:

> It's hard to say why. Like when he -- when he swung at me, I was just so -- I couldn't believe it. Like, it was like, Really? You're going to swing the bat at me? And I just was so mad that he did it, you know. I don't really know what I was feeling. The police asked me the same thing. Was I angry? No. I was just, like, kind of, like in disbelief over the whole, the whole thing, you know. I didn't -- I don't know what I'd call it.

(Trial Transcript p. 385).

The jury was addressed in regard to voluntary manslaughter before initially retiring to deliberate and twice more in response to questions from the jury. It was only after the last time and after the jury had returned to deliberations that defense counsel objected.

During the original jury instructions, the jurors were told of the five possible verdicts they could return: not guilty or guilty of first degree murder, second degree murder, third degree murder, or voluntary manslaughter. The jurors were told that there

4

could be no murder unless a person acts with malice. After defining how malice can be proven with respect to the various forms of murder (Trial Transcript pp. 567-74), I discussed voluntary manslaughter in this manner:

> The fourth form of homicide that I want to instruct you about is voluntary manslaughter. **As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present. When these circumstances are present, the killing may be voluntary manslaughter but never murder. This is true when a defendant kills in the heat of passion following a serious provocation.**
>
> **Accordingly, you may find the malice and murder only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from serious provocation by the victim.** A defendant acts under an intense passion if he acts under an emotion such as anger, rage, sudden resentment or terror that is so strong that it renders him incapable of cool reflection.
>
> A defendant acts under a sudden passion if the time between the provocation and the killing is not long enough for the passion of a reasonable person to cool. A defendant's passion results from serious provocation if it results from conduct or events that are sufficient to excite an intense passion in a reasonable person. Thus, the existence of sudden passion and serious provocation turn on how a reasonable person confronted by the same provocation would react.
>
> **Remember, you can find malice and murder only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from serious provocation by the victim.**
>
> The law recognized that the cumulative impact of a series of related events can lead to sudden passion and amount to serious provocation. The test is whether a reasonable person confronted with the same series of events would be capable of cool reflection. The reducing circumstance of a defendant acting under -- well, I'm sorry. That doesn't apply in this case.

5

**If you find the Defendant acted under the heat of passion and under circumstances with serious provocation, then you can't find he committed murder and that it would be manslaughter.** (Trial Transcript pp. 574-76).

Neither side, when given the chance, objected to the original instructions to the jury. (Trial Transcript p. 581).

After deliberations began, the jury made a request for some exhibits, and about 90 minutes into deliberations, the jury asked for clarification when intent to commit a felony must occur for second degree murder. There was no objection to the manner in which I answered that question. (Trial Transcript pp. 592-94).

Approximately 3½ hours later the jury asked whether the felony for second degree murder had to be robbery as charged. Defense counsel made no objection to the manner in which that question was answered. (Trial Transcript pp. 594-98).

A little over an hour later, as dinner time approached, I summoned the jury back to the courtroom to inquire about their progress and to determine if we should consider ordering dinner for them. During that exchange, a juror asked me to explain the difference between murder two and murder one. Another juror asked me to explain murder one as well, and then said to do them all. I instructed them as follows:

> All right. For first degree murder, the Commonwealth has to prove, that Gary Marchalk is dead; second, that the Defendant killed him; and third, that the Defendant did so with specific intent to kill and with malice.
>
> A person has specific intent to kill if he has a fully formed intent to kill and is conscious of his or her intentions. A killing by a person who has

6

a specific intent to kill is a killing with malice provided that it's also without circumstances reducing the killing to voluntary manslaughter.

So in order to have first degree murder, the -- you have to be convinced beyond a reasonable doubt that the Defendant specifically intended to kill his father.

Second degree murder, which is felony murder, that's a situation under the law where if you're committing a felony, if a person is committing a felony and someone is killed in the process of committing that felony, that they could be held responsible for the killing. And the Commonwealth has to prove, again, that the Defendant killed Gary Marchalk; and second, that he did so while committing or attempting to commit a particular felony.

There are only certain felonies that the statute applies to, and the one that is alleged in this case is robbery. So you have to be convinced beyond a reasonable doubt that he killed him while committing a robbery or attempting to commit a robbery. And third, the Defendant was acting with malice. And you may find the Defendant was acting with malice if you are satisfied beyond a reasonable doubt that he committed the robbery because robbery is crime inherently dangerous to human life and, therefore, there does not have [to] be any other proof of malice in the case.

And what I explained to you before, the issue here in terms of whether robbery was committed, in terms of whether second degree murder was committed, you have to be convinced beyond a reasonable doubt that at the time the assault took place, that it was the Defendant's intent to steal from his father.

If you believe, on the other hand, that the intent to steal occurred after the assault as just a way to get away from the scene, it's not robbery and it's not second degree murder. The assault has to take place during the commission with the intent of committing a theft. Robbery is theft by use of force or threat of force. The assault itself cannot be the felony that generates felony murder.

For third degree murder, third degree murder is any killing with malice that's not either first or second degree murder. So you have to be convinced beyond a reasonable doubt that Gary Marchalk's dead; second,

7

that the Defendant killed him; and third, that he did so with malice. And malice is a shorthand way of referring to a particular mental state that the law regards as being bad enough to make a killing murder.

A killing is with malice if the perpetrator's actions show his wanton and willful disregard of an unjustified and extremely high risk that his or her conduct would result in death or serious bodily injury to another.

In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove, however, that the perpetrator took action while consciously, that is, knowingly, disregarding the most serious risk he was creating and that his or her disregard of that risk demonstrated the extreme indifference to the value of human life.

And then the fourth form of homicide that you have to consider is voluntary manslaughter. **There can be no malice when certain reducing circumstances are present. When these circumstances are present, a killing may be voluntary manslaughter but not murder. This is true when a defendant kills in the heat of passion following serious provocation.**

**Accordingly, you can find malice and murder only if you're satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting in serious provocation by the victim.** A defendant acts under intense passion if he acts under an emotion such as anger, rage, sudden resentment or terror that is so strong that it renders him incapable of cool reflection.

A defendant acts under sudden passion if the time between the provocation and the killing is not long enough for the passion of a reasonable person to cool. A defendant's passion results from serious provocation if it results from conduct or events that are sufficient to excite an intense passion in a reasonable person.

Thus the existence of intense passion turns on the actual mental and emotional state of the defendant, while the existence of sudden passion and serious provocation turn on how a reasonable person confronted by the same provocation would react.

8

**Remember, you can find malice and murder only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from the serious provocation by the witness -- by the victim.** I'm sorry. It's getting late.

The law recognized that the cumulative impact of a series of related events can lead to sudden passion and amount to serious provocation. The test is whether a reasonable person confronted with the same series of events would become so impassioned that he or she would be incapable of cool reflection.

(Trial Transcript pp. 599-605).

I asked if there was anything from counsel, and the Commonwealth then asked me to reinstruct the jury regarding premeditation requiring no particular length of time and the jury's right to infer specific intent to kill from the use of a deadly weapon on a vital part of the body. I did so. Defense counsel had no requests. The jury then returned to its deliberations without objection from defense counsel.

An hour later, defense counsel advised me, on the record, that she believed that, when I was discussing the order of considering the charges, that I failed to instruct the jury that they must consider evidence of heat of passion when determining whether the Commonwealth has proven malice. I declined to do so again, because that instruction was given. (Trial Transcript pp. 507-08).

In quoting from my instructions, I bold-faced those lines in which I explained to the jury that there can be no murder without the Commonwealth proving that the defendant acted with malice and that, in order to find malice, the jury had to be convinced beyond a reasonable doubt that the defendant was not acting in the heat of passion. I

9

believe I did so four different times. Defense counsel made no objection to those instructions when they were given although given the opportunity to do so. An hour after they jury had gone back to deliberate following the fourth such instruction, defense counsel asked me to again instruct them that the presence of heat of passion can negate murder. I felt, as I do now, that I had adequately explained how the malice necessary for murder could not be found unless the jurors were convinced beyond a reasonable doubt that the defendant was not acting in the heat of passion as provoked by the victim.

BY THE COURT,

Dated: 4-26-19

10