J-S08013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD MILTON LEBER | : | |
| | : | |
| Appellant | : | No. 893 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 16, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000704-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD MILTON LEBER | : | |
| | : | |
| Appellant | : | No. 894 MDA 2022 |

Appeal from the Judgment of Sentence Entered June 10, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000705-2020

BEFORE:   OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 12, 2023**

Appellant, Richard Milton Leber, appeals from the judgment of sentence

entered on May 16, 2022 and June 10, 2022, respectively, following his jury

_____

[*] Retired Senior Judge assigned to the Superior Court.

trial convictions for two counts each of indecent assault of a child under 16 years of age and corruption of minors.[1] We affirm.

We briefly summarize the facts and procedural history of these consolidated cases as follows. On March 6, 2020, the Commonwealth charged Appellant with, *inter alia*, the aforementioned charges, following allegations by two minor females that Appellant inappropriately touched them.[2] The victims, E.B. and R.B., are sisters. Appellant was a former long-time family friend who worked with the victims' father. A two-day jury trial commenced on December 13, 2021. E.B., R.B., the girls' mother, and Appellant testified. E.B. testified that Appellant would touch her breasts, buttocks, and vagina with his hands, both over and under her clothing, beginning when she was 12 years of age and continuing for several years. E.B. testified that she told her mother on multiple occasions, but the touching continued. Eventually, E.B. reported the touching to her guidance counselor. R.B. testified that Appellant groped her buttocks over her clothes without her consent on one occasion when she was 14 years old. The victims' mother testified that from 2015 to 2019, she abused painkillers and alcohol, did not recall the time period, and that it was possible that E.B. told her multiple times about Appellant's conduct but she could not remember. Appellant testified that there were single instances with each girl where he remembered hugging and smacking them

---

[1] 18 Pa.C.S.A. §§ 3126(a)(8) and 6301(a)(1)(ii).

[2] The Commonwealth filed separate criminal informations at each of the captioned trial court docket numbers, but moved to consolidate them for trial.

on the buttocks in a congratulatory way. At the conclusion of trial, the jury convicted Appellant of the abovementioned offenses. The trial court deferred sentencing for the preparation of a pre-sentence investigation report and for an evaluation to be conducted by the Sexual Offenders Assessment Board (SOAB) regarding whether Appellant should be deemed a sexually violent predator (SVP).

On May 16, 2022, the trial court held a sentencing hearing. The trial court adopted the SOAB's recommendation that Appellant be classified as an SVP. The trial court also imposed an aggregate sentence of nine to 23 months of incarceration followed by a consecutive term of five years of probation. On May 26, 2022, Appellant filed a post-sentence motion that the trial court denied on June 21, 2022. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:[4]

    I.    Whether the conviction is against the weight of the evidence relative to indecent assault and corruption of minors[?]

---

[3] Appellant filed notices of appeal on June 21, 2022. On June 27, 2022, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. This Court consolidated the appeals on June 29, 2022. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 24, 2022.

[4] Appellant also challenged his designation as an SVP, but "[a]fter further research and deliberation, Appellant is no longer pursuing that issue." Appellant's Brief at 6. We find that issue abandoned and, therefore, waived. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

II.   Whether the evidence was insufficient to sustain Appellant's conviction of indecent assault of R.B.[?]

Appellant's Brief at 4 (unnecessary capitalization and docket numbers omitted).

Appellant contends that "[t]he verdicts as to indecent assault and corruption of minors in both cases were against the weight of the evidence." *Id.* at 7.   With regard to E.B., Appellant claims her testimony "was contradicted by other Commonwealth witnesses and was inherently unreliable." *Id.*  With regard to R.B., Appellant suggests that his convictions for indecent assault and corruption of minors were against both the sufficiency and weight of the evidence because "the Commonwealth did not prove that any touching was done for [Appellant's] sexual gratification." *Id.* at 7.   More specifically, in sum, Appellant posits:

> Appellant's testimony was uncontradicted and credible.[5]  There was no scientific evidence supporting the claims of E.B. and R.B. E.B. described assaults which would have occurred with others present or in near proximity to the events.  E.B. testified that she told her mother on numerous occasions that Appellant assaulted her; however, her mother said she never told her anything until May 19, 2019.  E.B. testified that her mother was always home when the assaults happened; however, her mom or any other witness did not testify they saw anything out of the ordinary when Appellant was at the home.  No witnesses heard E.B. scream or make any other noises.  She testified her mom and Appellant were having an affair, and in fact witnessed them engaged in sexual

_____

[5] Appellant claims that "[a]s to E.B., he stated he gave her [a] hug congratulating her on something and gave her 'a smack in [sic] the ass.'" Appellant's Brief at 11 (record citation omitted).  Moreover, Appellant testified that "R.B. gave Appellant a hug for giving her mom money for food" and that he "only gave R.B. a hug that one time." *Id.* (record citations omitted).

activity. However, her mom denied ever having an affair with Appellant [and] testified she never saw or heard anything inappropriate when Appellant was at the residence. [The mother] testified if she would have been told anything or thought anything inappropriate was happening to E.B. or R.B., she would have reported it or told someone.

R.B. in summary testified that Appellant only touched her one time. No one witnessed the event or heard anything out of the ordinary. Appellant allegedly touched her buttocks once for a period of five seconds. There was no testimony it was sexual in nature. Appellant's uncontradicted and credible testimony was that he never touched R.B. other than giving her a hug one time.

*Id.* at 11-12. Appellant maintains that the evidence to support his convictions for indecent assault and corruption of minors regarding R.B. was insufficient because the Commonwealth "did not establish the touching was for the purpose of arousing sexual desire in Appellant or R.B" or "offend[ed] the morality of R.B." *Id.* at 14.

We adhere to the following standards:

Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is de novo and our scope of review is plenary. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Soto***, 202 A.3d 80, 93 (Pa. Super. 2018) (citation omitted).

Furthermore, we have previously determined:

A victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime. Thus, [] attempts to enhance [a sufficiency of the evidence] argument by asserting that the Commonwealth failed to present any corroborating evidence to support the victim's in-court identification testimony does not establish that the identity evidence was insufficient.   Moreover, [an] assertion that the victim's testimony was contradicted by [an appellant's] own [testimony] is irrelevant to [a] sufficiency analysis. "Variances in testimony ... go to the credibility of the witnesses and not the sufficiency of the evidence." ***Commonwealth v. Galloway***, 434 A.2d 1220, 1222 (Pa. 1981).

***Commonwealth v. Johnson***, 180 A.3d 474, 478 (Pa. Super. 2018) (some internal citations omitted).   Moreover, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime."   ***Id.*** at 481.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial

court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered.

In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Soto*, 202 A.3d at 97 (citation omitted).

Here, the trial court determined that there was sufficient evidence to support Appellant's convictions and that the verdict did not shock the conscience of the court to warrant relief on his weight of the evidence claim. More specifically, the trial court noted the alleged inconsistencies between the trial testimony of E.B. and her mother. *See* Trial Court Opinion, 8/24/2022, at 22. However, the victims' mother admitted that "between 2015 and 2019[,] she was abusing drugs and alcohol which affect[ed] her memory of that time period" and that she conceded "it was possible that E.B. told her about the incidents with [Appellant] and she did not remember because of her addiction." *Id.* She further testified that "it was possible, but unlikely, that

she could not remember a possible sexual relationship" with Appellant. *Id.*
E.B. testified that Appellant "used his hands to touch her breasts and genital
areas, including her butt[ocks] on multiple occasions." *Id.* at 23. "R.B.
testified that [Appellant] hugged her but instead of just being a hug his hand
went down and groped [and] grabbed her butt[ocks] over her clothes." *Id.*
The trial court noted that "it [was] within the purview of the jury to reconcile
the testimony and judge the credibility of the witnesses." *Id.* at 24.
Ultimately, the trial court stated that "the jury chose to believe the evidence
presented through the testimony of E.B., R.B., and [their mother] and deem
[their testimony] credible just as they were within their province to deem
[Appellant's] testimony not credible." *Id.* Moreover, the trial court
determined that the jury could infer that Appellant's touching of R.B. did not
occur outside the context of a sexual or intimate situation and that the contact
was done for the purpose of sexual arousal or gratification. *Id.* at 27-28.
Finally, the trial court also determined that "[t]he jury's verdict was not so
contrary to the evidence as to shock [the c]ourt's sense of justice." *Id.* at 24.
Based upon a review of the certified record, the parties' appellate briefs, the
trial court's opinion, and applicable law, we find that the trial court thoroughly
and accurately addressed the merits of Appellant's appellate issues in its
opinion. Consequently, we affirm on the basis of the trial court opinion and
adopt it as our own. The parties are instructed to attach a copy of the trial
court's August 24, 2022 opinion to all future filings regarding this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/12/2023</u>



\* I M P O U N D E D \*



\* B A T C H \*

**Defendant-Name:**

**Richard Milton Leber**



\* A P P E A L \*

**Case Number**



\* C P - 6 7 - C R - 0 0 0 0 7 0 4 - 2 0 2 0 \*

OTN:

**U 840815-3**



Musti Cook, Maria

| Serviced TO: BY: | Mail | CERT Mail | Inter-Office | Hand DEL | FAX | E-MAIL |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |

Notes:

☐ **RE-SCAN needed**

Reason:

**RETURN TO RECORDS UNIT**

I attest and certify that as Deputy Clerk of Courts I have properly Serviced and Docketed the documents related to this case action and have verified the completeness and image quality of the scanned documents.

☐ **Docketed in CPCMS**   Date:

☐ Scanned Images OK - Verified / QC'd

Signature or Stamp - Deputy Clerk of Courts

**Dan Byrnes - York County Clerk of Courts**

L1

**RECEIVED**

*By Clerk of Courts at 3:02 pm, Aug 24, 2022*

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA CRIMINAL DIVISION

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | No. CP-67-CR-0704-2020 |
| | : | No. CP-67-CR-0705-2020 |
| | : | |
| v. | : | |
| | : | |
| RICHARD MILTON LEBER, | : | |
| Defendant/Appellant. | : | |

## STATEMENT OF LOWER COURT PURSUANT TO Pa .R.A.P. 1925(a)

AND NOW, this 24th day of August, 2022, upon receipt of a notice that an appeal has been filed in this matter, and in consideration of the Concise Statement of Errors Complained Of filed on behalf of Richard Milton Leber (hereinafter referred to as "Defendant"), by and through his attorney, Richard Robinson, Esquire, the undersigned files this statement pursuant to Pa. R.A.P. 1925(a).

## FACTUAL AND PROCEDURAL HISTORY:

On March 6, 2020, Defendant was charged with two counts of Indecent Assault[1] and one count of Corruption of Minors[2] in Docket Number CP-67-CR-0704-2020. Defendant was charged with two counts of Aggravated Indecent Assault[3], two counts of Indecent Assault[4], and one count of Corruption of Minors[5] in Docket Number CP-67-CR-0705-2020. On that same date, the York County District Attorney's Office filed a Notice of Consolidation pursuant to Pennsylvania Rule of Criminal Procedure 582. At the time of trial, the Commonwealth amended the informations to add one count of Indecent Assault[6] in Docket Number CP-67-CR-0704-2020 and, in Docket Number CP-67-CR-0705-2020, one count of Aggravated Indecent Assault[7] and one count of Indecent Assault[8].

---

[1] 18 Pa.C.S. §3126(a)(7)
[2] 18 Pa.C.S. §6301(a)(1)(ii)
[3] 18 Pa.C.S. §3125(a)(7), 18 Pa.C.S. §3125(b)
[4] 18 Pa.C.S. §3126(a)(7)
[5] 18 Pa.C.S. §6301(a)(1)(ii)
[6] 18 Pa.C.S. §3126(a)(8)
[7] 18 Pa.C.S. §3125(a)(8)
[8] 18 Pa.C.S. §3126(a)(8)

A jury trial took place from December 13, 2021, through December 14, 2021. N.T. Jury Trial 12/13/2021-12/14/2021. R.B. and E.B., the alleged victims, both testified at the trial.

E.B. was seventeen (17) years old when she testified. N.T. Jury Trial, 12/13/2021, p. 91. E.B. identified Defendant as a friend of both her parents. *Id.* at 94. E.B. went on to testify that she knew Defendant her "whole life basically". *Id.* E.B. indicated that Defendant would come over to the house a few times every month. *Id.* at 110. E.B. testified that Defendant touched her breast, butt, and vagina with his hands, on more than one occasion. *Id.* at 96-97. She further testified that Defendant touched her breast over clothing and under clothing when E.B. was not wearing anything under her shirt. *Id.* at 102. E.B. stated that Defendant touched her butt both on top of her clothes and under her clothes when Defendant slipped his hand under her shorts and underwear. *Id.* at 98-99. She specified that when Defendant touched her butt it was a touch and not a smack. *Id.* at 103. E.B. explained that, when Defendant touched under her shorts and underwear, he touched the outside of her vagina. *Id.* at 99. She also stated there were a few times that it was different and "he stuck his fingers inside". *Id.* at 99-100. E.B. could not

remember at what age this happened but that some of the incidents occurred when she was under thirteen (13) years of age. *Id.* at 100. E.B. testified that she told Defendant to stop several times but he "just kind of laughed it off". *Id.* at 104.

E.B. testified that these incidents occurred at her home both outside and inside the house. *Id.* at 96. E.B. indicated that when the incidents occurred inside the house, they were in the living room or the kitchen. *Id.* at 101. E.B. indicated when touching occurred outside it was by the front doors or the back door. *Id.* at 103. E.B. went on to clarify her testimony that when the incidents occurred outside the house, they were on the front porch. *Id.* at 115. E.B. also testified that other family members were home and they would be "in the room, like, their bedrooms" or outside. *Id.* at 101.

E.B. indicated that she told her Mother, after the third incident when she was twelve (12) years old, about Defendant touching her; however, nothing happened and Defendant did not stop. *Id.* at 105-106. E.B. stated that she did not tell anyone else, at that time, because she "didn't really trust anybody back then". *Id.* at 111. E.B. also testified that Defendant told her he would put cameras in her room if she told somebody. *Id.* at 109-110.

E.B. testified that she kept a journal and wrote about one of the incidents that took place. *Id.* at 104. Through reviewing the journal, E.B. was able to recall that on May 7, 2019, Defendant touched her bottom. *Id.* at 105. On that date, E.B. stated, she told her Mother about Defendant touching her. *Id.* E.B. indicated that, after telling her Mother in May of 2019, she also told her high school guidance counselor. *Id.* at 111.

R.B. was eighteen (18) years old when she testified at trial. *Id.* at 136. She identified Defendant as a former family friend that worked with her father. *Id.* at 139. R.B. testified that it was common for Defendant to come over to the house. *Id.* at 141. She stated that on one occasion Defendant groped her. *Id.* at 139. R.B. explained that, at the time of the incident, Defendant was leaving and she was the only one in the house. *Id.* at 140. R.B. stated that Defendant hugged her but instead of just being a hug his hand went down and grabbed her butt. *Id.* R.B. went on to testify that she froze then told Defendant to leave and left the kitchen and living room area herself. *Id.* at 140-141.

R.B. also discussed her observations of E.B. R.B. testified that E.B. would act scared when Defendant came over to the house, not wanting to go

in the same room as Defendant. *Id.* at 141. R.B. testified that E.B. was "this bright, happy person that would want to go outside, go play on the trampoline, and then it all stopped". *Id.* at 149. R.B. went on that E.B. would not leave her bedroom and that she stopped eating and talking. *Id.*

Michelle Bair, the mother of both R.B. and E.B., testified at trial. Ms. Bair identified Defendant as a family friend. *Id.* at 161. Ms. Bair explained that she first met Defendant through her husband, Thomas Bair, and through a business relationship. *Id.* at 167. She stated that, over the years, beginning in the mid-1990s, it was common for Defendant to come to the house, once or twice a week, to talk to her and the kids. *Id.* at 163-164, 168. Ms. Bair also testified that during the years of 2015 to 2019, she abused painkillers and alcohol and, as a result, her ability to remember that time-period is affected. *Id.* at 162. As a result, Ms. Bair admitted that it is possible that E.B. told her multiple times about Defendant touching her. *Id.* at 163.

After being colloquied, Defendant took the stand and testified. Defendant testified that he has known Thomas Bair since birth and Michelle Bair since 1990 or 1991. N.T. Jury Trial, 12/14/2021, p. 216-217. Defendant then went on to testify that he had known E.B. since she was thirteen (13) or

fourteen (14) years of age from going to the Bair's house. *Id.* at 217. Defendant stated that about five years ago (2016) he started taking food to the Bair household. *Id.* at 219-220. Defendant also testified that he gave R.B. and her Mother money one time. *Id.* at 218. Defendant stated that prior to five years ago (2016) the only time he would see Tom was when he went to the office to pay the fuel bill and had no contact with the children. *Id.* at 221.

In Docket Number CP-67-CR-0704-2020, Defendant was found guilty of Indecent Assault on a child under 16, Defendant at least four or more years older[9], and Corruption of Minors[10]. *Id.* at 284-285. In Docket Number CP-67-CR-0705-2020, Defendant was found guilty of one count of Indecent Assault on a child under 16, Defendant at least four or more years older[11], and one count of Corruption of Minors[12]. *Id.* at 285-287. Defendant was found not guilty of the remaining charges. *Id.*

Defendant requested a pre-sentence investigation (hereinafter referred to as "PSI"), and the Commonwealth requested an evaluation to be done by

---

[9] 18 Pa.C.S. §3126(a)(8)
[10] 18 Pa.C.S. §6301(a)(1)(ii)
[11] 18 Pa.C.S. §3126(a)(8)
[12] 18 Pa.C.S. §6301(a)(1)(ii)

the Sexual Offenders Assessment Board (hereinafter referred to as "SOAB"). *Id.* at 289-290.

Sentencing and a hearing on Defendant's sexual violent predator status occurred on May 16, 2022. N.T. Sentencing, 05/16/2022, p.1. Evidence of predatory behavior was found and the SOAB determined Defendant met the criteria to be classified as a sexually violent predator (hereinafter referred to as "SVP"). *Id.* at 14. The Court accepted and adopted the SOAB opinion and deemed Defendant to be a sexually violent predator under the Sexual Offender Registration and Notification Act[13] (hereinafter referred to as "SORNA"). *Id.* at 33. In Docket Number CP-67-CR-0704-2020, on Count 4, Defendant was sentenced to three (3) to eleven and a half (11 ½) months incarceration in the York County Prison, directed to pay the costs of prosecution, and comply with sex offender conditions. *Id.* at 40. On Count 5, Defendant was sentenced to five (5) years probation to run consecutive to Count 4 and to pay the costs of prosecution. *Id.* In Docket Number CP-67-CR-0705-2020, on Count 4, Defendant was sentenced to six (6) to eleven and a half (11 ½) months incarceration in the York County Prison, directed to pay the costs of

---

[13] 42 Pa. C.S. §§9799.10-9799.41.

prosecution, and to comply with any sex offender conditions. *Id.* On Count 7, Defendant was sentenced to five (5) years probation to run consecutive to Count 4 and to pay the costs of prosecution. *Id.* The sentences in the two cases were to run consecutive to each other for the jail terms; however, the two probationary sentences could run concurrent to one another for an aggregate sentence of nine (9) to twenty-three (23) months incarceration in the York County Prison followed by five years of probation supervision. *Id.*

On May 26, 2022, Defendant filed a post-sentence motion. On June 10, 2022, this Court denied Defendant's post-sentence motion. On June 21, 2022, Defendant filed a notice of appeal to the Superior Court. On June 27, 2022, this court issued a concise statement order. On June 29, 2022, the Superior Court of Pennsylvania consolidated the appeals docketed at CP-67-CR-0704-2020, 893 MDA 2022 and CP-67-CR-0705-2020, 894 MDA 2022. Defendant filed a Statement of Errors Complained of on Appeal on July 11, 2022.

In both cases, Defendant asserts claims of sufficiency and weight of the evidence at trial and that the Court erred in its determination that Defendant

is a sexually violent predator. Statement of Errors Complained of Pursuant to

Pa. R.A.P. 1925 (b), 07/11/2022.

## DISCUSSION:

### I. WHETHER THE COURT ERRED IN DETERMINING DEFENDANT MET THE CRITERIA OF A SEXUALLY VIOLENT PREDATOR

Defendant claims this Court erred in its determination that Defendant

met the criteria to be classified a SVP, pursuant to 42 Pa. C.S. §9799.24, due

to reliance on inaccurate and/or incomplete information as a basis for the

expert's opinion. Statement of Errors Complained, Docket Number CP-67-

CR-0704-2020, 07/11/2022, p. 1; Statement of Errors Complained, Docket

Number CP-67-CR-0705-2020, 07/11/2022, pp. 1-2. Specifically, Defendant

points to: Dr. Stein's reliance upon alleged multiple violations of a Protection

From Abuse (hereinafter referred to as "PFA") Order when there was one

violation which did not involve R.B. or E.B.; relative to E.B., Dr. Stein's

reliance upon allegations and offenses for which Defendant was found not

guilty; relative to R.B., Dr. Stein's reliance upon allegations of multiple

instances of sexual contact with R.B. when R.B. testified that there was only one such instance; and Dr. Stein not reviewing the trial transcript. *Id.*

At a hearing to determine SVP status, the Commonwealth has the burden of establishing by clear and convincing evidence that Defendant meets the criteria to be designated a SVP. 42 Pa. C.S. § 9799.24(e)(3). "This burden of proof has been described as an intermediate test, falling below the highest level of proof, beyond a reasonable doubt, but above the preponderance of the evidence standard." *Commonwealth v. Stephens*, 74 A.3d 1034, 1039 (Pa. Super. 2013). To meet this level of proof, the evidence should be "so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue". *Id.* (citing *Commonwealth v. Meals*, 912 A.2d 213, 219 (Pa. 2006)).

The factors considered in determining a SVP designation are set forth in SORNA. Section 9799.24 states, in part,

> An assessment shall include, but not be limited to, an examination of the following:
> (1) Fact of the current offense, including:
>     (i)   Whether the offense involved multiple victims.
>     (ii)  Whether the individual exceeded the means necessary to achieve the offense.
>     (iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa. C.S. §9799.24(b). Discussing these factors, the Pennsylvania Supreme Court stated

[w]ith regard to the various assessment factors…, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation.

*Commonwealth v. Prendes*, 97 A.3d 337, 358 (Pa. Super. 2014) (citing *Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa. Super. 2010)). "Thus, '[t]he Commonwealth does not have to show that any certain factor is present or absent in a particular case." *Id.* "The statute governing the SVP assessment does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings" and, in fact, the statute requires the production of documents and information "without limitation on the 'admissibility" of that information." *Id.* at 360.

The Pennsylvania Superior Court held, in *Prendes*, that an "SOAB expert opinion falls within the general rules regarding expert witnesses". *Id.* at 361. As a result, "the rules of evidence place 'the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination'". *Id.* "Opposing counsel bears the burden of exposing and exploring 'any weaknesses in the underpinnings of the expert's opinion'." *Id.*

At the SVP hearing for Defendant, the Commonwealth called one witness, Robert M. Stein, PhD. Dr. Stein is a licensed psychologist and member of the Pennsylvania SOAB. Defendant stipulated to Dr.

Stein's qualifications as an expert in the field of sexual offender assessment and the Court recognized him as an expert in that field. N.T. Sentencing, 05/16/2022, p. 7.

Dr. Stein completed the Court Ordered assessment of Defendant, prepared a written report, and determined that Defendant meets the criteria for classification as a SVP. Dr. Stein testified that he relied on the court order for the assessment, the response from defense counsel, a report by the SOAB investigator, the criminal complaints, informations and affidavits of probable cause for both cases, reports from the Pennsylvania State Police, and a complaint and affidavit relating to a violation of a PFA. *Id.* at 8.

Dr. Stein testified that, in making a determination, he considers the fifteen (15) factors mandated by Statute[14] in every assessment he has completed. *Id.* at 9. Dr. Stein indicate that he conducted an assessment of Defendant on February 4, 2022. *Id.* at 10. Dr. Stein determined that Defendant's case involved multiple victims which is associated with "greater practice or risk-taking". *Id.* Dr. Stein also

---

[14] 42 Pa. C.S. §9799.24(b)

considered that various forms of sexual touching were involved and that the victims were unrelated to Defendant but were family friends. *Id.* at 10-11. Dr. Stein testified that pursuing underage victims is consistent with sexual deviance, "even if the victims were older, like 13 or 14". *Id.* at 11. Dr. Stein indicated that the age of the Defendant, seventy-six (76) when these acts started, is considerably older than the young victims and is consistent with sexual deviance. *Id.* at 12.

Dr. Stein also testified about behavioral characteristics that contribute to the individual's conduct. Here Dr. Stein referred to Defendant's violation of the PFA by contacting the victim's mother and the victim's after being told not to do so by the Court. *Id.* Finally, Dr. Stein cited statistical factors related to risk or increased risk with unrelated victims. *Id.* Dr. Stein testified that, although over the age of sixty (60) is generally associated with decreased risk, given Defendant was well over that age when the sustained course of conduct began, Dr. Stein did not view Defendant's advanced age as a protected factor in this case. *Id.* at 12-13.

Dr. Stein testified that, in his opinion, there was sufficient evidence to find mental abnormality, that is other specified pedophilic disorder nonconsenting. *Id.* at 13. Further, Dr. Stein found Defendant's actions to be consistent with predatory behavior. *Id.* Dr. Stein testified that all his opinions were rendered to a reasonable degree of medical scientific certainty. *Id.*

Defense counsel exercised his right to cross-examine Dr. Stein regarding his opinions. *Id.* at 15-22. During that cross-examination, counsel clarified with Dr. Stein that the alleged violation of the PFA was for contacting the victims' mother, Michelle Bair, not the victims themselves. *Id.* at 15. Counsel also confirmed with Dr. Stein that he did not review the trial transcript and that Defendant was found not guilty on the counts of aggravated indecent assault of E.B. *Id.* Dr. Stein agreed, pointing out that the front page of his report indicated Indecent Assault, not Aggravated Indecent Assault, and the body of his report indicated forms of sexual touching rather than penetrative touching. *Id.* at 18-19. Dr. Stein acknowledged that he was not aware that, at trial, R.B. testified that any touching happened only one time. *Id.* at 20.

On redirect, Dr. Stein indicated that neither clarification that the alleged PFA violation was for contact with Michelle Bair nor testimony that, as it related to R.B., one incident of touching occurred changed his opinion. *Id.* at 22.

Defendant did not call an expert to testify on his behalf. This Court heard argument, from counsel, as to the information Dr. Stein relied upon in conducting his assessment. Counsel explored, through cross, any weaknesses he perceived in how Dr. Stein reached his opinion. However, despite a few discrepancies which were clarified, Dr. Stein clearly stated that he would not change his opinion that Defendant meets the criteria to be classified as a sexually violent predator. As a result, this Court did not err when it found and adopted Dr. Stein's opinion that based upon the multiple victims in this case, the significant age difference between the victims and the Defendant, and the various other statutory factors set forth in Dr. Stein's report, the Defendant is a SVP.

## II. WHETHER THE CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE
### A. INDECENT ASSAULT

Defendant claims the conviction of Indecent Assault under 18 Pa. C.S. §3126(a)(7) and Corruption of Minors under 18 Pa. C.S §6301(a)(1)(ii) was against the weight of the evidence due to the inconsistent nature of the testimony of R.B., resulting in the Commonwealth's attempt to impeach its own witness, and the inconsistent and not credible nature of E.B.'s testimony. Statement of Errors Complained, Docket Number CP-67-CR-0704-2020, 07/11/2022, pp. 1-3; Statement of Errors Complained, Docket Number CP-67-CR-0705-2020, 07/11/2022, pp. 2-3. Specifically, Defendant points to: the inconsistent testimony between E.B. and Michelle Bair as to whether or not E.B. told her Mother about the incidents and whether or not Ms. Bair engaged in a sexual relationship with Defendant; the Commonwealth's attempt to impeach R.B.'s testimony of one indecent contact with prior statements that the allegations occurred on multiple occasions; and Defendant's testimony that he did not touch either minor child in an inappropriate, indecent or sexual way, touching E.B. in a congratulatory manner one time and hugging R.B. one time. Statement of Errors Complained, Docket Number CP-67-CR-0704-

2020, 07/11/2022, pp. 1-2, and Statement of Errors Complained, Docket Number CP-67-CR-0705-2020, 07/11/2022, p. 2.

Scrutiny of whether a verdict is against the weight of the evidence is governed by the standard set forth in *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). In *Widmer*, the Pennsylvania Supreme Court stated:

> [a]n allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations, footnotes, and quotation marks omitted). The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. *Commonwealth v. DeJesus*, 580 860 A.2d 102, 107-108, (Pa. 2004).

"Questions concerning inconsistent testimony and improper motive go to the credibility of the witnesses." *Id.* The Pennsylvania Supreme Court stated, in *Commonwealth v. Seese,*

> [t]he question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved exclusively for the jury.

*Commonwealth v. Seese,* 517 A.2d, 920, 922 (Pa.) (citations omitted). It is well settled that, in Pennsylvania, the uncorroborated testimony of a victim of sexual assault, if believed by the trier of fact, is sufficient to convict a Defendant. See *Commonwealth v. Davis,* 650 A.2d 452, 455-456 (Pa. Super. 1994); *Commonwealth v. Poindexter,* 646 A.2d 1211, 1214 (Pa. Super. 1994); *Commonwealth v. Kunkle,* 623 A.2d 336, 338 (Pa. Super. 1993); *Commonwealth v. Trimble,* 615 A.2d 48, 50 (Pa. Super. 1992); *Commonwealth v. Ziegler,* 550 A.2d 567, 569 (Pa. Super. 1988); *Commonwealth v. Stoner,* 425 A.2d 1145, 1148 (Pa. Super. 1981).

Defendant was convicted of Indecent Assault under Section 3126 of the Pennsylvania Crimes Code. Section 3126 (a)(8) states:

> (a) [a] person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> > (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa. C.S. §3126 (a)(8). "Indecent contact" is defined under Section 3101 of the Pennsylvania Crimes Code as follows, "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person". 18 Pa. C.S. §3101.

Defendant was also convicted of Corruption of Minors under Section 6301 of the Pennsylvania Crimes Code. Section 6301 (a)(1)(ii) states:

> [w]hoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an

offense under Chapter 31 commits a felony of the third degree.

18 Pa. C.S. §6301(a)(1)(ii).

In the case at bar, E.B. and Michelle Bair were not consistent, with each other, in their testimony regarding E.B. reporting the incidents to her mother and whether or not Ms. Bair had a sexual relationship with her Mother. However, when questioned about her recollection, Ms. Bair testified that between 2015 and 2019 she was abusing drugs and alcohol which affects her memory of that time period. N.T. Jury Trial, 12/13/2021, p. 162. Ms. Bair conceded, on re-direct, that it was possible that E.B. told her about the incidents with Defendant and she did not remember because of her addiction. *Id.* at 163. Ms. Bair also testified that it was possible, but unlikely, that she could not remember a possible sexual relationship with Defendant. *Id.* at 170. E.B. testified that when Defendant touched her, they were in the common areas of the house or outside on the porch. *Id.* at 96. E.B. also testified that during those incidents other family members were home but were in their bedrooms or other locations, not in the room with her and Defendant. *Id.* at 101.

E.B. testified that Defendant touched her private areas. N.T. Jury Trial, 12/13/202, at 96. E.B. went on to clarify that Defendant used his hands to touch her breasts and genital areas, including her butt, on multiple occasions. *Id.* at 96-97. E.B. also testified that Defendant called her "hot" once. *Id.* at 108. Initially, when asked how old she was when these incidents occurred, E.B. answered that she could not remember but later indicated it happened when she was under thirteen (13) years of age and over thirteen (13) years of age. *Id.* at 100.

R.B. testified that on one occasion, when she was about fourteen (14) years old and in her parents' house, Defendant went to give her a hug but his hand went down and grabbed her butt. *Id.* at 140. When asked if anything else happened with Defendant, R.B. responded "no". *Id.* at 141. Additionally, when the Commonwealth attempted to refresh R.B.'s recollection and later impeach her with prior statements that multiple incidents occurred, R.B. did not change her testimony and clearly stated that Defendant "groped" her one time. *Id.*, at 139-140. R.B. testified that Defendant hugged her but instead of just being a hug his hand went down and groped, grabbed her butt over her clothes. *Id.*

This Court instructed the jury that it was entitled to believe the testimony E.B. and R.B., if they deemed that testimony credible. N.T. Jury Trial, 12/14/2021, p. 266. The jury was also instructed on some of the factors to use when judging the credibility and weight of testimony. *Id.* at 261-265.

The Pennsylvania Supreme Court has held that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994) (quoting *Thompson v. City of Philadelphia*, 493 A.2d 669, 672 (Pa. 1985)).

The jury's verdict was not so contrary to the evidence as to shock this Court's sense of justice. The determination of guilt was not against the weight of the evidence, and the Defendant is not entitled to a new trial. It is within the purview of the jury to reconcile the testimony and judge the credibility of witnesses. Here, the jury chose to believe the evidence presented through the testimony of E.B., R.B., and Michelle Bair and deem it credible just as they were within their province to deem Defendant's testimony not credible.

The jury believed that the Commonwealth met its burden and the verdict does not shock one's conscience. The jury chose to believe the evidence presented through the testimony of both E.B. and R.B. In conclusion, the determination of guilt found by the jury was properly based upon the evidence and Defendant is not entitled to a new trial on the charges of indecent assault and corruption of minors.

## III. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN DEFENDANT'S CONVICTION OF INDECENT ASSAULT OF R.B.

Defendant claims the Commonwealth did not present sufficient evidence for the Court to find Defendant guilty of Indecent Assault under 18 Pa. C.S. §3126 (a)(8). Statement of Errors Complained, Docket No. CP-67-CR-0000704-2020, 07/11/2022 p. 2. Specifically, that the evidence presented by the Commonwealth was insufficient to establish that Defendant touched or had indecent contact with R.B. as required under 18 Pa. C.S. §3126 (a). *Id.* at p. 3. Defendant claims the Commonwealth's attempt to impeach its own witness renders that witness inherently unreliable and not credible. *Id.* at p. 3.

The review of Defendant's claim of insufficient evidence is based upon the following standard:

> [i]n evaluating a sufficiency claim, the Court must accept the evidence in the light most favorable to the Commonwealth as verdict-winner and in drawing all rational evidentiary inferences, determine whether a sensible jury could have found that each element of the crime was established beyond a reasonable doubt.
>
> Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence.

*Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa. Super. 2007) (citations omitted).

As discussed in Section II of this Statement, credibility is for the finder of fact to decide. Reviewing the evidence in a light most favorable to the Commonwealth, the jury can accept that Defendant grabbed R.B.'s butt on one occasion. In conjunction with the testimony of E.B., the jury could infer that such an act does not occur outside of the context of a sexual or intimate

situation. The Superior Court has held "when the actions undertaken by the defendant do 'not occur outside of the context of a sexual or intimate situation', then the factfinder is free to conclude that the contact was done for the purpose of arousing or gratifying the defendant's sexual desire." *See Commonwealth v. Caban*, 2016 Pa. Super. Unpub. LEXIS 721 at 13 (Where the Superior Court held rubbing a female's breasts and touching her vagina does not occur outside of the context of a sexual situation) citing to *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

Though the evidence shows Defendant only touched her buttocks while hugging R.B., R.B. herself described it as groping and grabbing. Even though no other intimate part of her body was touched, such as her breasts like in *Caban*, the statute requires "[a]ny touching of the sexual or other intimate parts of the person...". 18 Pa. C.S. §3126 (a)(8). Therefore, Defendant did not need to touch more than her buttocks. The evidence, when viewed in a light most favorable to the verdict winner and within the context of the other testimony presented, promotes a reasonable inference that Defendant indecently touched R.B. for the purpose of arousing or gratifying his own sexual desires and not for any other purpose and Defendant's claim fails.

## CONCLUSION

Based on the above reasons, this Court respectfully urges affirmance of the jury's verdict on December 14, 2021, and judgment of sentence imposed, by this Court, on May 16, 2022.

The Clerk of Courts is directed to provide notice of the entry of this Statement to the York County District Attorney's Office; Richard Robinson, Esquire, counsel for Defendant; and Defendant, Richard Milton Leber.

**BY THE COURT,**

**MARIA MUSTI COOK,**
**PRESIDENT JUDGE**