J-A10040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLISA KOSH | : | |
| | : | |
| Appellant | : | No. 241 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 7, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001353-2023

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JULY 25, 2025**

Appellant, Willisa Kosh, appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County after the trial court found her guilty of simple assault[1] for throwing hot macaroni and cheese on a neighbor who she confronted at a grocery store. She challenges the sufficiency of the evidence sustaining her conviction, arguing that the evidence failed to prove she caused or attempted to cause bodily injury or acted with the requisite *mens rea* for simple assault. Upon review, we affirm.

As of July 2022, Appellant and Deborah Nogueras had been neighbors and had known each other for about four years. **See** N.T. Trial/Sentencing, 12/7/23, 8-9. There had been prior "issues" between them; Ms. Nogueras

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. 2701(a).

had been found guilty of harassment and conspiracy with respect to a past incident involving Appellant. *Id.* at 9-10, 23-28.

At 5:30 p.m. on July 31, 2022, Ms. Nogueras encountered Appellant outside the entrance of a Shop Rite grocery store in the 2900 block of Fox Street in Philadelphia. *See* N.T. Trial/Sentencing, 12/7/23, 8, 10-11. Appellant was exiting the store and Ms. Nogueras was going into the store while talking to her mother on a FaceTime call on her phone when Ms. Nogueras heard Appellant say to her, "Bitch, you always got something to say. You always got something smart to say. Bitch[,] fight me now." *Id.* at 10-12, 31-32. Appellant "yanked" a shopping cart away from Ms. Nogueras before telling Ms. Nogueras, "Bitch[,] fight me now. I'm tired of your shit. I don't like you." *Id.* at 12. At some point during this interaction outside the store, Ms. Nogueras called Appellant "a bum bitch." *Id.* at 32. Appellant then followed Ms. Nogueras into the store. *See id.* at 14.

The confrontation inside the store was captured by surveillance video, and is discussed below, showing that Appellant threw hot macaroni and cheese on the left side of Ms. Nogueras's face. *See* N.T. Trial/Sentencing, 12/7/23, 15, 40. As a result of the contact of the macaroni and cheese with her skin, Ms. Nogueras sustained "a blemish red burn." *Id.* at 12/7/23, 15. A manager at the store took photographs of Ms. Nogueras's face at that time. *See id.* at 16, 44-45. The next day, Ms. Nogueras sought treatment at an urgent care facility and was prescribed a burn ointment, Bacitracin. *See id.* at 18-20, 43. Ms. Nogueras took a photograph of herself that next day which was later

included in the evidentiary record, along with the photographs taken by the store manager and the surveillance video recording of the incident. ***See id.*** at 12, 15-17, 43-45.

In the surveillance video, Appellant can be seen swinging what appears to be a white Styrofoam container at Ms. Nogueras in two underhand swings and two overhand swings, while Ms. Nogueras tried to block the swings with her left arm, and the contents of the container hit Ms. Nogueras after the fourth swing:



Cropped Screenshot from Surveillance Video, Commonwealth Exhibit 1, 17:40:43 (reflecting Appellant, obstructed by balloons, overhand swinging

container at Ms. Nogueras just prior to container's contents contacting Ms. Nogueras).



Cropped Screenshot from Surveillance Video, Commonwealth Exhibit 1, 17:40:45 (reflecting moment after contents of container contacted Ms. Nogueras after Appellant's second overhand swing).

In addition to the splattering of the macaroni and cheese as seen in the video, Ms. Nogueras testified at trial that Appellant also hit her in her ear with a closed fist while they were outside the frame of the surveillance video. *See* N.T. Trial/Sentencing, 12/7/23, 46-47.

On February 17, 2023, Appellant proceeded to be tried before the Municipal Court of Philadelphia County. That court found her guilty of simple assault, found her not guilty of terroristic threats, and sentenced her to a nine-month probation term. *See* Trial Disposition and Dismissal Form, 2/17/23, 1; Order (sentencing), 2/17/23, 1. Appellant thereafter timely appealed to the Philadelphia County Court of Common Pleas for a trial *de novo*. *See* Notice of Appeal, 2/21/23, 1.

Appellant proceeded to a trial *de novo* on December 7, 2023. *See* Waiver of Jury Trial, 12/7/23, 1. After viewing the evidence and hearing the arguments of counsel, the trial court found Appellant guilty of simple assault. *See* N.T. Trial/Sentencing, 12/7/23, 60. On the same date, the court sentenced Appellant to a one-year probation term. *See id.* at 65; Order (sentencing), 12/7/23, 1. Appellant timely appealed and filed a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). *See* Notice of Appeal, 1/4/24, 1; Order (Rule 1925(b)), 2/16/24, 1; Rule 1925(b) Statement, 3/11/24, 1-2.

Appellant presents the following questions for our review:

1. Was the evidence insufficient to establish that [Appellant] caused or attempted to cause bodily injury, which is necessary to sustain her conviction for simple assault?

2. Even if the complainant had suffered bodily injury, was the evidence insufficient to establish that [Appellant] acted with the requisite *mens rea* for simple assault?

Appellant's Brief, 1 (answers of the lower court omitted).

Appellant challenges the sufficiency of the evidence for simple assault. *See* Appellant's Brief, 11-24. She argues that: (1) Ms. Nogueras did not suffer bodily injury as a result of the thrown macaroni and cheese, *id.* at 11-16; (2) she did not attempt to inflict bodily injury on Ms. Nogueras when she threw the macaroni and cheese, *id.* at 16-21; and (3) assuming *arguendo* that Ms. Nogueras did suffer bodily injury from the contact with the macaroni and cheese, the evidence failed to prove that Appellant "intentionally, knowingly, or recklessly caused" that injury, *id.* at 21-24.

"Because a determination of the sufficiency of the evidence presents a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Ewida**, 333 A.3d 1269, 1279 (Pa. Super. 2025) (internal quotation marks and citation omitted). Our standard of review for the instant claim is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Gary***, 332 A.3d 118, 123-24 (Pa. Super. 2025) (citation omitted).

For the conviction for simple assault at issue, the Commonwealth needed to prove, beyond a reasonable doubt, that Appellant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another."   18 Pa.C.S. § 2701(a)(1).   "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain."  18 Pa.C.S. § 2301. Even when no injury occurs, the Commonwealth may establish a violation of section 2701(a)(1) by proving that the defendant acted with specific intent to cause bodily injury.  ***See Commonwealth v. Klein***, 795 A.2d 424, 428 (Pa. Super. 2002).  "This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury."  ***Commonwealth v. Richardson***, 636 A.2d. 1195, 1196 (Pa. Super. 1994).  "A person acts intentionally with respect to a material element of an offense" if "it is h[er] conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i).

Here, Appellant argues, *inter alia*, that she did not attempt to inflict bodily injury on Ms. Nogueras.  ***See*** Appellant's Brief, 16-21.   She acknowledges a lack of relevant caselaw in our Commonwealth addressing attempts to inflict bodily injury by throwing food on someone and suggests that the facts of this case are more akin to a scenario of a defendant spitting on a person, which she argues would be sufficient for harassment but not

simple assault. *Id.* at 17-20. In reviewing the evidence, she suggests that the macaroni and cheese thrown on Ms. Nogueras did not pose a threat of bodily harm because "the video coupled with Ms. Nogueras'[s] testimony shows[ Appellant] had been carrying [it] around with her bare hands for at least several minutes before throwing it." *Id.* at 18-19. She also suggests that the thrown macaroni and cheese was not hot, as described by Ms. Nogueras, because the contents of the container had been in her possession for at least two minutes of the surveillance video before she had thrown it on the victim. She also hypothesizes that since the store's video footage did not show her purchasing it, it must have been sold "at least several minutes" before the footage started with her outside the store. *Id.* at 19 n.6. Lastly, she asserts that the evidence did not support the characterization of the macaroni and cheese as hot or the threat of injury posed by it because "Ms. Nogueras did not cry, yell, or react as if she was in any way physically harmed by the food landing on her." *Id.* at 19.

Appellant's arguments fail to review the evidence consistent with our standard of review. Ms. Nogueras testified multiple times that the macaroni and cheese that was thrown at her was "hot." *See* N.T. Trial/Sentencing, 12/7/23, 14 ("Q. And what's that in the defendant's hands? A. A thing of *hot* macaroni and cheese.") (emphasis added); *id.* at 15 ("Q. And what did the defendant just do? A. She threw the *hot* macaroni and cheese on the left side of my face.") (emphasis added); *id.* at 40 ("Q. Ma'am, so at that point in the video -- after the mac and cheese was on you, you said this mac and cheese

was hot; is that right?  A. It was **hot**.") (emphasis added).  To the extent that Appellant asks us to essentially disregard Ms. Nogueras's assessment of the temperature of the food thrown on her, we cannot simply accept that premise on sufficiency review where our controlling standard of review requires us to consider all the evidence in the light most favorable to the Commonwealth.

Even if we were to consider Appellant's arguments about the supposed temperature of the thrown macaroni and cheese, they would not lead us to a reasonable inference to be made in Appellant's favor.  While the video evidence did not show Appellant making any purchases at the store, Ms. Nogueras noted in her testimony that she first saw Appellant on the day in question coming out of the Shop Rite grocery store before Appellant followed her into the store for the exchange between them recorded in the surveillance video footage.  **See** N.T. Trial/Sentencing, 12/7/23, 10-13.  The reasonable inference here is that Appellant had just purchased the heated macaroni and cheese from the store before leaving the store and encountering Ms. Nogueras.  The container in which Appellant held the macaroni and cheese appeared to be a white Styrofoam vessel capable of keeping the contents hot while Appellant could easily handle it.  **See** Surveillance Video, Commonwealth Exhibit 1, 17:39:57.

Assuming *arguendo* that the macaroni and cheese was hot and posed a threat of bodily injury, Appellant argues that she did not act with the requisite *mens rea* for simple assault which included, among other things, an intention to inflict bodily injury on Ms. Nogueras.  In making that argument, she again

argues, contrary to the appropriate standard of review and in the light most favorable to herself, that the macaroni and cheese was not hot and thus was incapable of injuring Ms. Nogueras by burning her. *See* Appellant's Brief, 22 ("Simply put, flinging soft food from a container onto a nearby person *where that food does not appear to be hot enough to seriously burn someone*, carries little risk of causing that person bodily injury.") (emphasis added). This argument must again be rejected under our standard of review based on Ms. Nogueras's repeated description of the macaroni and cheese thrown on her as "hot." N.T. Trial/Sentencing, 12/7/23, 14-15, 40.

Viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the trier of fact to conclude that Appellant attempted to cause bodily injury to Ms. Nogueras with the hot macaroni and cheese. After Appellant reentered the store while arguing with Ms. Nogueras in the presence of a store security officer, Appellant initially put the macaroni and cheese container and a clear plastic clamshell container, holding an item that appears to be a sandwich of some sort down on a ledge in the bottom right corner of the surveillance video frame. *See* Surveillance Video, Commonwealth Exhibit 1, 17:40:04. After twenty seconds of a heated verbal exchange with Ms. Nogueras, Appellant picked up her two food items and walked out of the bottom right frame of the video footage. *Id.* at 17:40:34. Eight seconds later, she returns to Ms. Nogueras, with the macaroni and cheese container in her right hand swinging it with her right hand toward Ms.

Nogueras's face four times, the last swing resulting in the splashing of the hot food onto Ms. Nogueras. *Id.* at 17:40:42-17:40:45.

Given Appellant's repeated swinging of the container in the direction of Ms. Nogueras's face with the unsecured container top facing Ms. Nogueras, the trier of fact could reasonably find that Appellant knew the macaroni and cheese had the potential to cause bodily injury and that she attempted to cause bodily injury by intentionally throwing the contents of the container on Ms. Nogueras. On this record, we cannot assume Appellant's intent was to annoy and not harm Ms. Nogueras; indeed, Appellant possessed a temperate food item—the sandwich in the box in her other hand—that, notably, she did not throw. In addition, Appellant's intent to cause bodily injury to Ms. Nogueras was supported by Ms. Nogueras's testimony that Appellant also hit her on her ear outside the frame of the surveillance video after Appellant threw the hot macaroni and cheese on her. *See* N.T. Trial/Sentencing, 12/7/23, 46-48 ("Q. … So[,] before the mac and cheese was on you, it's your testimony that you were punched with a closed fist -- A. No, it wasn't before, it was after.").

Under our controlling standard of review, the evidence amply proved that Appellant attempted to cause bodily injury to Ms. Nogueras and thereby sustained her conviction for simple assault. Namely, it showed that Appellant had the specific intent to cause bodily injury and took a substantial step causing bodily injury by repeatedly swinging the container of hot macaroni and cheese in the direction of Ms. Nogueras's face. *See Commonwealth v.*

*Soto*, 202 A.3d 80, 94 (Pa. Super. 2018) ("convictions under [Section] 2701(a)(1) may be established b[y] showing that a defendant had the specific intent to cause bodily injury and took a substantial step toward causing bodily injury"); *see, e.g.*, *Commonwealth v. Bior*, 37 N.E.3d 31, 37-38 (Mass. App. Ct. 2015) (holding evidence sufficient for a Massachusetts jury to convict Bior of assault and battery of dangerous weapon, *i.e.*, hot water, where Bior, could have reasonably known that thermos contained hot liquid, intentionally threw thermos at victim, thermos had unsecured top, and hit victim in forehead, and hot water from thermos spilled onto victim, causing serious burns; noting that "jury could justifiably find that [Bior's] throwing the hot water in a metal and glass container with an unsecured top had the potential to cause serious bodily injury").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/25/2025